(Lucas County Court of Common Pleas.)

FRANK J. CHENEY v. GEORGE H. KETCHAM., et al.

1. Inherent power exists in a club incorporated not for profit, to expel for sufficient cause, one of its members who is a stockholder in the corporation, and the corporation may enact by-laws conferring this power on a committee or board. In the absence of such delegation the power must be exercised by the corporation at large.

2. But such member must have reasonable opportunity to be heard and defend against charges preferred against him, without which opportunity any expulsion would be void

3. A member acquiring membership in the club by virtue of one of the provisions of its by-laws, is estopped to deny his obligation to be bound by rules and regulations which are a part of the same by-laws, governing his conduct as such member, on the ground that such by-laws had not legally been adopted.

4. The proper remedy of a member of such club who has illegally been expelled, is by injunction and not mandamus, or an action for damages.

PRATT, J.

This action is brought by Frank J. Cheney, as a member of the Club, against a majority of the board of trustees, the steward, secretary, and assistant secretary, of the Toledo club. The club itself is not made a party. The petition alleges that the club is a corporation under articles filed August 31st, 1889, the purpose for which organized being alleged in the petition to be for the acquiring and maintaining a clubhouse, furniture and other appurtenances, for the use of the corporation, and that it should have a capital stock of thirty-five thousand dollars, in shares of one hundred dollars each. That the plaintiff was one of the original subscribers, and one share of stock was issued to him July 3, 1890, and ever since owned by him; that the club property is designed and used as a place for its members to rest and procure refresh-

ments, at reduced prices. It then charges that the defendants, by wrongful combination and conspiracy, have excluded the plaintiff from the use and enjoyment of the property of the club, and threaten and intend to continue for all time in the future to exclude him therefrom, to his great and irreparable injury. The prayer is for an injunction.

The defendants file a joint answer, admitting that they are officers of the club as charged, and that the plaintiff became a member of the same, but allege that he has not been such member since the 12th of April, 1897. They deny that the acquiring of property by the club was its controlling purpose, but allege that it was organized for the purposes of amusement, social culture and mutual improvement of its members, and that the acquiring of property was incidental only to such purposes, and that the corporation was not organized for profit. It then sets forth in full a copy of the articles of incorporation, and alleges that on the 25th of Novemer, 1889, articles and laws for the government of the club were duly adopted, and sets forth certain sections of said by-laws. Sec. 2, of Art. II, provides that the subscribers to the membership of the club shall be active members upon paying an admission fee of one hundred dollars. Sec. 7 provides for the admission of other members. Art. IV. provides as to the powers and duties of the trustees, and sec. 4 of that article provides, that such trustees—among other powers—may "reprimand, suspend or expel, by an affirmtive vote, of two-thirds of all the trustees," and—among other reasons—"for any conduct which, in the opinion of the board, is improper or is prejudicial to the welfare and reputation of the club." It provides for the manner in which charges and specifications shall be filed and investigated. It then alleges, that on July 13, 1896, charges and specifications were filed against the plaintiff, in writing, by John N. Mockett, one of the members of the club, of improper intimacy with the wife of Mockett, and sets forth a copy of the charges It alleges the giving of notice to the plaintiff of the filing of said charges, and that the same would be heard on the 8th of March, 1897; that on that date plaintiff appeared, by his attorney, and, on the requests of such attorney, hearing was postponed until April 12th, when, it is alleged, that hearing was had upon the charge and plaintiff expelled and notified of such expulsion, and that no appeal was taken by him from such action.

Plaintiff, by his reply, denies that the controlling purpose of the club was for social or similar purposes, but alleges that the property of the corporation was used and enjoyed by the owners of the capital stock, and that all other purposes were incidental thereto; denies that the by laws set forth in the answer were legally adopted, or that he consented to or acquiesced therein; admits the filing of the charges; alleges

that he appeared by attorney before the board of trustees for trial thereon, but that his attorney was excluded by the board and that no trial was ever had. It also alleges that Muckett, who filed the charges, sat as a member of the board and voted for his expulsion, and that his vote was necessary to constitute the requisite majority of the board. It alleges that whatever was done by the board was "the arbitrary, wrongful and fraudulent act of the said defendants" named as members of the board, and without any trial or investigation of the charges filed.

Reduced to the simple, material and controverted elements of these pleadings, the issues between the parties are:

1. The charge made in the petition that the defendants as officers of this club, wrongfully combining and confederating together, had excluded plaintiff from the benefits and privileges of the club.

2. The allegation on the part of the defense that, by reason of the charges filed against the plaintiff, he has been, under the rules and by laws of the club, duly expelled from the club, and for that reason, no longer entitled to its benefits and privileges.

3. The denial by the plaintiff both of the power of the board of trustees to expel him, and the fact that such board has expelled him upon investigation or trial of these charges

There is very little material conflict in the evidence introduced or question as to the facts necessary to be considered by the court in arriving at its conclusions as to the law. The legal questions involved are, however, important, and, some of them at least not easy of solution, and these have been exhaustively argued by counsel for the respective parties and a great number of authorities cited by each of them.

I. It being admitted that the plaintiff was one of the original members of this corporation and owner of one share of its stock, and that he was, by reason thereof, entitled to and did receive and enjoy its benefits and privileges, and it being conceded that from and after April 12, 1897, he has been, and still is, denied and deprived of such benefits and privileges by the defendants, who, as officers of said corporation, are entrusted with the care and control of its rights and privileges, the first and fundamental question to be determined is:

Has the plaintiff been legally expelled from such membership and is he not rightfully excluded from such rights and privileges?

The determination of this question involves the following considerations:

1. What is the character of this corporation, and what property right has the plaintiff as a stockholder, in the same?

The articles of incorporation have not been offered in evidence, but purport to be set forth in full in defendant's answer, and there is no denial that they are so correctly

set forth—unless it is to be considered as covered by the general denial in the reply. Counsel, however, for both parties have discussed the bearing of the several provisions of these articles, and I consider them the same as though the originals were before me. By these articles it is provided:

(a). That it is incorporated as an incorporation "not for profit, under the general incorporation laws of Ohio."

(b). Its name and location are designated.

(c). "3d. The purposes for which said corporation is formed is for association, amusement, literary and social culture and mutual improvement, and for the purpose of acquiring by purchase, lease or otherwise, and owning and maintaining in said city of Toledo, club rooms, and a club-house for the use of the corporation and its guests, with such real estate, furniture, fixtures, library and paraphernalia as may be deemed necessary or desirable to carry out the purposes of such corporation."

(d). That the club shall have a capital stock of $35,000, "to be used only for the purposes of acquiring and maintaining said club-house and club-rooms as above specified, and for other purposes incidental thereto"

It is contended on behalf of the plaintiff, that this is not a voluntary association where no property is involved, but that, being a corporation with capital stock and the plaintiff being one of the stockholders, there is no power in his co-stockholders to exclude him from the benefits for such ownership—except upon conditions not claimed to exist in his case—and it is alleged that the statutes of Ohio recognize corporations with capital stock organized for profit, and those with capital stock organized not for profit; also that it is not important, in determining whether a corporation is one for profit or not, whether the profits and advantages to be derived from the ownership of the stock are distributed in cash dividends, or in benefits otherwise conferred upon the members, and that where the power of forfeiture of these rights is not conferred by the express terms of the charter, or by a contract between the corporators, such power does not exist.

On behalf of the defendants it is maintained that there are but two classes of corporations in Ohio: one organized for profit, and the other organized for purposes other than for profit, and that the latter fall within the principles governing what are generally termed voluntary associations, whether the property incidental to carrying out its objects and purposes is represented by capital stock, or is owned by the corporation without such individual representation. The contention of the respective parties in this respect, is stated in their pleadings, substantially, on the one hand: That the privileges and benefits are incidental to the property rights of the stockholder; and, on the other: That the property rights are incidental to the carrying out of the social

and other similar purposes of the associa-
tion.

Counsel for both parties cite in support
of their respective propositions, many decis-
ions in the various courts of this country,
state and federal, and also some decisions
of the English courts. Naturally and prop-
erly, the decisions of the courts of our own
state must largely be looked to as authority
upon questions like this arising in reference
to corporations organized under our stat-
utes. But it is found upon examination,
that while the number of decisions of
courts of other states, arising in reference
to corporations organized under other stat-
utes, are very numerous, in our state they
are very few in number, and these princip-
ally in courts other than the supreme court
of the state.

Defendants' counsel, however, has cited
the case of Snyder v. The Chamber of Com-
merce, et al , 53 Ohio St., page 1. This
case I consider especially important here,
not only because it is a late decision of
our own supreme court, but also for the
reason that the articles of incorporation
there under consideration, provide that it
is "formed not for profit," and also provide
for a capital stock, and the syllabus is as
follows:

"The declaration in the articles of incor-
poration of a Chamber of Commerce, that
it 'is formed not for profit' is not incon-
sistent with a provision for capital stock,
nor with a declaration that it is intended
to promote the prospertiy of the city in
which it is located; and the trustees or di-
rectors of such corporation are personally
liable for all its debts by them contracted."

The question involved there was whether
the trustees of a corporation created for pur-
poses other than profit, should be liable for
debts of the corporation and could be held
liable where the corporation had a capital
stock. An examination of the case shows
that the arguments presented by counsel
there were largely the same—or at least in
the same line—as those urged before me on
the argument here. It was claimed there—
as it is claimed here—among other things—
and upon the facts there shown with fully
as much support—that by the method of
its organization the corporation was brougt
within the class of corporations organized
for profit under our statute. In short, the
question was there squarely presented to
and necessarily and directly decided by the
court, that the having of a capital stock
did not necessarily make it a corporation
organized for profit. There is but one dis-
tinction, so far as I can see, between that
case and this, that can be urged against its
conclusiveness here, and that is, that the
holding of stock there was not necesary to
membership. Judge Shauck, in the conclu-
ding sentence of the opinion of the court as
delivered by him, after a review of the pro-
visions of the different sections of the stat-
utes affecting the question, gives the fol-
lowing definition of a "corporation organ-
ized for profit:"

"Corporations for profit, within the mean-
ing of the statute, are those which are
formed for the prosecution of business en-
terprises with a view to realizing gains to
be distributed as dividends among the
shareholders in proportion to their contrib-
utions to the capital stock."

This seems to me a conclusive answer to
very much of the argument of counsel for
the plaintiff in this case, upon this ques-
tion.

What, then, is the position of a member
of this corporation? He must be the owner
of at least one share of its stock; but that
alone does not entitle him to membership in
the corporation, or to the enjoyment of its
rights, benefits or privileges: he must also
be one of the original subscribers, or he
must thereafter be admitted or elected to
membership in accordance with such rules
and by-laws as may be adopted by the cor-
poration Without membership, the owner-
ship of the stock alone would not confer any
of the rights or privileges which are denied
to the plaintiff. His expulsion from mem-
bership would not forfeit any right of
ownership which he has, or ever had in this
stock. He at all times held that share of
stock as a member subject to the continu-
ance of his membership so far as the enjoy-
ment of these privileges and benefits were
concerned. Any sale or transfer of this
stock to another, could not confer any of
these rights and privileges or benefits upon
his grantee. He could assign the stock to
one who was already a member, or to any
one who might thereafter be admitted to
membership, or he could assign to any other
person who could be found willing to take
the stock with this limitation upon his
right to the enjoyment of such benefits.
This right of his to sell or transfer this
property would not be taken away by ex-
pulsion from membership, and in view of
this, I hold that the argument of counsel
for plaintiff and the authorities cited by
him in reference to the disfranchisement
or forfeiture of the rights of stockholders in
joint-stock associations, or corporations or-
ganized for business purposes only, are not
applicable to this case. They would only be
applicable and require a consideration where
a corporation was organized for profit under
our statute as construed by our courts, and
it having been determined by a decision of
our supreme court, as it seems to me, that
this corporation is not of that character,
this branch of the argument of plaintiff's
counsel fails.

2. What right, if any, existed in this cor-
poration to expel the plaintiff from member-
ship, and, if any, how must it be exercised?
Having found that this was not a corpora-
tion organized for profit, it follows, as I
think, that the inherent power existed in
the corporation, incident and necessary
to its very existence, for the purposes for
which it was created, to discipline or expel
one of its members, for sufficient cause;
and that the right to adopt rules and regu-
lations, or by-laws, defining such cause,

also existed as a part of this inherent power, independent of the statute. This I think too clearly the principle of law to be applied to a corporation of this character to require any extended citation of authority. As perhaps a better statement, however, of his rule, I will quote and adopt the language of Judge Evans of the Franklin Common Pleas, in the case of Hershiser v. Williams, reported in 24 Bulletin, p. 314. This was a case in which great interest was felt at the time and in which there were a number of prominent attorneys engaged upon each side, and among them the attorney for plaintiff in this case. The language of the court in that case to which I refer, is as follows:

"The doctrine that a society, whether incorporated or not, organized for religious, fraternal or social purposes, has the power to expel one or more of its members for conduct detrimental to it, is fully sustained by the adjudications and is supported by reason. Indeed. the doctrine is essentially necessary for the welfare of the society and that it may accomplish the objects for which it was organized."

I hold that statement of the law as applicable to this case. I think, however, that it is equally clear that, independent of some rule or by-law, of the corporation, its power to expel must be exercised by the corporation at large, and not by any officer, committee, or board of the corporation. And here the position is taken by counsel for plaintiff, that there is no valid by-law of this corporation giving any jurisdiction to the board of trustees to expel the plaintiff, and that this board was therefore without authority or jurisdiction to expel him. It is conceded that by-laws and regulations adopted in accordance with the statutory provisions would be binding upon all the members, but it is claimed that the required notice of the meeting to be held for such purpose was not given to the subscribers to this stock. The statute requires that such notice should be served personally or by publication. Competent proof of publication has not been made, and the sending of notices by mail, as testified to by Mr. Hoyt, is not personal service. We are therefore to inquire here whether the plaintiff is in position, as between him and these defendants as the officers of this corporation, to raise the question as to the legality of the adoption of these by-laws. The evidence shows that preliminary to the organization of this corporation a subscription paper was circulated, beginning in the latter part of the year 1889, (the date not being definitely fixed and the paper not now found) which was signed by certain parties agreeing each to take one or more of the shares of stock of the corporation to be organized. It is shown that this paper was signed by the plaintiff for one share, the date of his signature not, however being fixed other than that it was before July 3, 1890, the date of the shares of stock issued to the original subscribers. The articles of

incorporation were drawn August 28, 1889. November 25, 1889, a meeting was held which assumed to adopt by-laws for the government of the corporation. Twenty-nine persons are named as having been present. The plaintiff is not one of them. Whether he had subscribed before that time, is not shown. Whether all who had subscribed before that time were present, is not shown. Whether the plaintiff, if he had subscribed before that time, had any notice whatever of the meeting, is not shown otherwise than by such presumption as might follow from the testimony of the secretary, that he mailed a copy of the by-laws to all those who had subscribed before that time, of the meeting to be held on the 21st of November, 1889, and which was adjourned to the 25th of November, when the action was taken upon the by-laws. Article II of the by-laws, provides as to membership; and sec. 2 of this article—quoted in full from the records of the corporation—reads as follows:

"All who have subscribed to membership in the club, a list of whose names shall be affixed to these by-laws, shall be active members upon paying to the club the admission fee of one hundred dollars."

The plaintiff's share of stock was dated July 3d, 1390, and was received and receipted for by him September 10, 1890. When he paid for it, is not shown—except that it was on or before the issue of the stock. The testimony shows that the stock subscribed was paid for by an assessment, first of fifty per cent., and the balance before delivery. Whether the plaintiff's share was paid for in one, or more assessments, is not shown. But whatever the fact may be as to these payments or the date at which they were made, the plaintiff became a member under and by virtue of the provision above quoted—sec. 2, art. II, of these by-laws; and, waiving all other questions, it seems to me clear that he could not acquire membership by virtue of one provision of these by-laws and be permitted to deny his obligation to be bound by rules and regulations which were a part of these same by-laws governing his conduct as such member, or escape the provisions therein providing for his expulsion from membership, on the ground that such by-laws had not been legally adopted. These by-laws made full provision for the election of officers of said corporation and the conduct of all the affairs of the corporation under which the plaintiff was for all these years in the enjoyment of its benefits, and, on one occasion at least, it is admitted that he was present at, and took part in a meeting providing for the election of trustees and directors thereof. He must, as I hold, be deemed to have consented and acquiesced in these by-laws.

It is, however, further contended on behalf of the plaintiff, that so much of sec. 4, of art. IV, of these by-laws as provides that the board of trustees might expel a member "for any conduct which in the opinion of the board is improper or prejudicial to the welfare and reputation of the

club," is void for uncertainty. That to leave to two-thirds of the members of the board the determination as to what would be improper or prejudicial to the interests of the club, would be to confer upon its members arbitrary power; that no offense nor any specified conduct was thereby designated as being sufficient to exclude him. The question as to what is sufficient cause for the expulsion of members of such corporations, is one that has been very many times raised in different courts, and there are very many decisions bringing under consideration and construction the by-laws of such corporations. Many of those have been referred to in the discussion before me. Numerous sections of Thompson on Corporations have been cited, in which many decisions are referred to and discussed. I have not attempted, and do not think it would be profitable for me to undertake the task of examining all these decisions; but I have examined them sufficiently to find many cases where by-laws providing for the expulsion of members, have been—to say the least—as general in terms as those here in question, and have been sustained. The leading case cited by counsel for defendant, is that of Commonwealth, ex rel. etc., v. The Union League, reported in 19 Atlantic Reporter, 1030. This was in the supreme court of Pennsylvania, and that court sustained a by-law providing that a member might be suspended by its board "for acts or conduct which they may deem disorderly or injurious to the interests or hostile to the objects of the league." This case is referred to and discussed in connection with other cases bearing upon the same question, in an article in the 31 Central Law Journal, at page 202. The same questions have also been raised in the lower courts of our own state; Blumenthal v. Chamber of Commerce, 9 Bulletin, 76. There the district court of Hamilton county, sustained a by-law providing for the expulsion of a member of the chamber for any act contrary "to the spirit which should govern commercial transactions," and this decision affirmed the superior court, in which Judge Harmon of that court gave a very full and able opinion in the same case, reported in the 7th Bulletin, 327.

Without further reference to particular cases, it seems to me that to require a corporation such as this, by its rules or by-laws, to specify every act which could be made a basis of explusion, for conduct subversive to the interests and purposes of the corporation, would be unreasonable and impracticable; that it would be impossible for any organization such as this to continue its existence and carry out its purposes under such requirement; and I therefore hold that this by-law was a proper and reasonable provision for the filing of the charges made against this plaintiff, and that this board of trustees had jurisdiction, upon these charges being filed, to proceed to the investigation and trial of these charges, and if upon such trial, reasonably and fairly

conducted, this board of trustees, by a vote of two-thirds of all its members, found the charges to have been sustained, to expel the plaintiff from such membership, and that all his rights and privileges of which he now is denied, would then and thereby cease.

3. Was such trial had, and was the plaintiff so expelled from membership? There is very little, if any, doubt as to the rules under which this court should examine the evidence in considering this question. This court is not a court of appeal from a decision of the board of trustees; it is not a court of review as upon error. Counsel do not claim that we should regard any mere technalities in the proceedings of the board of this corporation, or of any of its officers; but our inquiry here, is whether there was a fair and reasonable exercise of the power vested in this board? Or, was this action so arbitrary or capricious as to show that the trustees acted from wrong or improper motives? Was there a trial of the charges made, to determine whether the plaintiff was innocent or guilty of these charges? The plaintiff had a right to have such a trial upon these charges. A trial pre-supposes an opportunity to the person charged to appear and defend against such charges. To deny him that right and still proceed to expel him, would be an arbitrary and unreasonable exercise of power on the part of the corporation. This court cannot investigate as to the truth or falsity of the charges made against the plaintiff. The board of trustees of this corporation, as I hold, was the forum for such trial. Plaintiff had a right to be heard before that board upon such trial, and to have a reasonable opportunity to produce evidence in his defense. The trial must be upon evidence, and he had the right to be present when the evidence was so produced against him The same rules as to the nature or character of the evidence governing trials in courts need not be observed, but there must be some proof produced as a basis of action. The plaintiff, in his reply in this case, charges that no trial was had by this board of such charges, and that no evidence was offered in reference thereto, and, not to go into details as to the evidence before me, I deem it only necessary to say, that I find these allegations are substantially sustained.

During the hearing before me, defendants sought to introduce certain testimony of admissions made, as was claimed, by Mr. Cheney, in a hearing on similar charges before another organization, at which several members of this board were present, and that these admissions were talked over in the board and considered as evidence, but did not offer to show that this talk among the members of the board was in the presence of Mr. Cheney, or of his counsel, or that either had any knowledge of such talk between the members of the board, or any opportunity to examine on, or give any evidence in reference to such claimed admissions. To consider any such proposed evi-

dence, would, in my judgment, be a return to the principle of "Star Chamber" trials, and I am still of the opinion that the testimony offered by counsel for defendants, was properly excluded in this hearing.

It appears that the attorney for Mr. Mockett, the prosecutor, and the attorney for Mr. Cheney, both appeared before the board, prepared to produce "in open court ' their evidence, and were denied that right. Counsel claim, on the authority of Black on Judgments, that the denial of a right to be heard is a mere irregularity; but, in the section referred to (sec. 215), the author refers to a case in the supreme court of the United States (93 U. S., 277), holding that an opportunity to be heard is an essential element of jurisdiction. I cannot bring my mind to the conclusion that a denial of the right of plaintiff to be heard in his defense, when charged with such gross immorality as that here involved, is a mere irregularity.

It is also charged that Mr. Mockett, the prosecutor, sat as a member of the board and voted in favor of expulsion of Mr. Cheney; and this is admitted to be true. Also, that seven members only, other than Mr. Mockett, voted in favor of his expulsion. That Mr. Mockett could not act as a judge, or vote upon any issue as to the guilt or innocence of Mr. Cheney, of the charges filed by him. I think clearly sustained, both by reason and authority: Black on Judgments, sec. 174, 266.

It is claimed that no vote was taken upon the charges made; and this also, I find to be true, upon the evidence. The record shows this only: "Moved and carried: That Mr. Cheney be expelled from membership of this club, according to the by-laws." The only oral testimony further showing grounds for expulsion is that of Mr. Cole, one of the trustees, that it was "for conduct unbecoming a gentleman." Neither the record or the oral testimony shows a vote taken upon the charges, either that Mr. Cheney was guilty or not guilty; and I find and hold that he was not convicted of the charges made, or of either of them.

I therefore find that the vote for the expulsion of the plaintiff was unauthorized and void, and that he was not therefore expelled, but that he still remains a member of the club.

The defendants having had opportunity, and having failed, when the charges were filed against the plaintiff, to avail themselves of the remedy which they had, the remaining question is:

## II.

What is the plaintiff's remedy upon his expulsion from the privileges of the club? 1. It is claimed on behalf of defendants, that plaintiff has none whatever in this court, because of his failure to appeal to the body of the corporation from the action of its board.

To this is answered: That the action of the board being void, there is nothing from which to appeal. But defendants still insist that the fact of which plaintiff complains is, that the defendants excluded him from participation as a member of the club, and that his remedy for such action is therefore by appeal, under the by-laws. A provision of the by-law is, that upon charges being preferred, notice shall be given to the party charged to appear and answer, and that "if the board shall impose upon the member complained of, any penalty provided for in this section," he may appeal therefrom to the club. No decision is cited by defendants' counsel to sustain the position that the plaintiff would be required to appeal when no trial had been had on the charges, and I presume none could be found that would necessarily bear upon the question. It is a question to be determined by consideration of the provision of the by-law, and in my opinion, the clear intention as shown by its language, is to provide a remedy for action taken upon a hearing had by the board, and not when there had been an illegal or wrongful action by the trustees or any other officer of the board, without a hearing or trial, and I hold that the plaintiff's remedy in this case would not be by appeal.

2. The next question—and one upon which I have had serious doubt—is, whether the plaintiff's remedy would be by mandamus, action for damages, or injunction.

There is authority, outside of Ohio at least, to sustain the position that mandamus would be the remedy; and in Ohio, there are cases from which the same position might be inferred. I refer to Ohio ex rel. etc. v. Lippa, 28 Ohio St., 655. There are also cases in the lower courts from which the same inference might be had. But it has now been authoritatively determined that this is not the proper remedy, by decision of our own supreme court—not yet published, but the proof of the opinion in which has been furnished me since the hearing—that mandamus would not be the proper remedy in such a case: Fraternal Mystic Circle v. Fritter. The decision there seems to be clearly applicable to this branch of this case; and under it, a mandamus would not lie here, for the reason that there is a remedy, either by injunction or by an action for damages. Which of these would be the proper remedy, the court does not there decide, but leaves the question open as to whether the action for damages would be an adequate remedy. There are very many cases in the books where the action was for damages. But, under the decision in 28 Ohio St., above, he could not bring an action for damages without abandoning his right to membership. Can he be required to do this? If this were a business corporation, where property rights only were involved, in which the stock had a certain money value, only ascertainable upon evidence, there would be strong support for the position that an action for damages would afford an adequate remedy, and that injunction would not therefore lie. In this

case, however, where the benefits to be enjoyed are not determinable by any rules that could be given to the jury, to fix their money value, I hold that an action for damages would no afford an adequate remedy; and that the plaintiff could not be required to resort to it in lieu of his action for injunction. See High on Injunctions, Vol. 1, sec. 30.

Finally, upon the whole case and upon the evidence now before me, I hold:

1. That the board of trustees had the right, when these charges were filed, and it was its duty to proceed to the trial of the charges made against the plaintiff, in accordance with the provisions of the by laws.

2. That in the absence of such trial, the defendants have no right to exclude the plaintiff from any of the rights and privileges of membership of the corporation.

3. That the appropriate remedy of the plaintiff is by injunction, and the prayer of the plaintiff's petition should be granted.

Smith & Baker, for the plaintiff.

Guy W. Kinney, for the defendants.