K. RICHARD KENDLER, Plaintiff-Appellant, *v.* RICHARD G. RUTLEDGE
*et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-1653

Opinion filed November 13, 1979.

George C. Pontikes and Sheldon Gardner, both of Foss, Schuman & Drake, of Chicago, for appellant.

Frank M. Covey, Jr., Fred I. Feinstein, and Steven H. Hoeft, all of McDermott, Will & Emery, of Chicago, for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, K. Richard Kendler, a licensed real estate broker and member of the Evanston North Shore Board of Realtors (the board), brought a declaratory judgment action in the circuit court of Cook County to challenge sanctions imposed against him by the aforementioned board. The board, acting individually and collectively as defendants, filed a motion to dismiss. The trial court granted the motion to dismiss but allowed an injunction to issue pending appeal to this court.

The Evanston North Shore Board of Realtors, a nonprofit corporation, is a voluntary association whose members engage in the buying, selling, exchanging, renting, leasing, managing, appraising, financing, building, developing or subdividing of real estate. The board has adopted bylaws and a code of ethics to govern the activities of its members. These rules and regulations are implemented by other bylaws

which detail the procedures for processing and ruling on complaints. A member charged with a violation has the right to appear, present evidence, and cross-examine his accusers. Additionally, the realtor has the right to seek review of an ethics committee decision by an appeals board made up of 10 of the board's directors. Plaintiff has named as defendants both the individual directors who sat for his intra-association appeal and the board as a whole.

On August 13, 1976, Continental-Hart, Shaw & Co. filed a complaint against the Kendler Company charging violations of the board's code of ethics and code for equal opportunity. Specifically, Continental alleged that Kendler Company and more particularly, K. Richard Kendler, had rejected a full-price offer to purchase a lot in a Lake Forest subdivision because the offerors, Continental's clients, were "non-white." After Kendler Company, through its president, Robert Kendler, responded, categorically denying all charges, Continental wrote a letter to the board three months after the original allegations asking that the complaint be amended to include plaintiff, K. Richard Kendler.

The attorney for Kendler Company, Sheldon Gardner, made three formal motions during this period pertaining not only to the structure and inclusiveness of the pending ethics committee hearing, but also to possible prejudice on the part of the committee. When the chairman of the committee, Herbert Kahn, denied these motions summarily at the beginning of the hearing, instead of prior to the proceedings as the attorney had requested, Gardner moved for a continuance. Upon the motion's denial, Gardner read two substantial objections to the proceedings into the record. He first objected to the committee's jurisdiction over the company since its president, Robert Kendler, and not it, Kendler Company, was a member of the board. Secondly, although his firm had received the attempted amendment to the complaint, it did not suffice as service on or notice to K. Richard Kendler since the service was not in conformity with the board's bylaws; and since Gardner was not representing K. Richard Kendler, it did not constitute service on an agent. The attorney then left.

According to the board's rules, the meeting proceeded even though none of the parties charged was present. Continental called witnesses to detail the events which precipitated its charges. The offeror, DeLars Bracey, testified that he had made an offer to the Kendler Company of $58,500 for a lot within one of their developments. When this offer was rejected, he amended the contract to propose the full listing price ($62,500). Immediately prior to the meeting at the Kendler Company, where the new offer was to be presented, the Braceys' agent, Harnden, told them that their earlier rejection was at least in part racially motivated. When they arrived at the company, Bracey asked plaintiff, who was the

only one present, if this statement was true. Plaintiff responded that he would not accept the contracts of any minority persons in that particular area. Harnden then offered plaintiff the contract, but he refused to accept it.

Townsend, an officer with Continental, testified that plaintiff had referred to the fact that he already had six nonwhite families in the subdivision and did not want any more. Further, Townsend was told that the company was in the process of putting a contingency in the listing that would require plaintiff's approval.

Harnden and Mrs. Bracey verified the above testimony. Harnden added that plaintiff had said "non-white" during their discussions. She also stated that when she submitted the first offer to a different member of the company staff, she was asked if her customer was black. The day after she delivered this first offer, the manager at Continental informed her that plaintiff had called to request an immediate meeting. At the meeting, plaintiff revealed that he was rejecting the offer for two reasons: first, it was underpriced; and second, it originated from a black family. He also made known his intent to reject even a full-price offer from this family and stated that if Bracey bought vacant property in the subdivision, plaintiff's firm could undermine completion of the homesite. Construction could be slowed by up to five years and by then, plaintiff would be out of the subdivision, and would not care who built homes there. Plaintiff then cited the case of another black who wanted property in the area and was discouraged by similar means.

Harnden also testified to plaintiff's financial explanation for his actions. Such a sale, plaintiff emphasized, could cost him millions of dollars; he advised the agent not to pursue the matter, and threatened to withdraw the property from the multiple listing service and to resign from the Evanston North Shore Board. After this meeting, Harnden related the discussion to the Braceys, and warned them that purchase of the property could leave them with a vacant lot and no way to get a home built. Harnden described the contract as addressed to Robert Kendler, who is also shown as the title holder of the property on the listing, rather than plaintiff, K. Richard Kendler.

Following the hearing, the board's ethics committee ordered various sanctions imposed on both the Kendler Company and K. Richard Kendler. This order was appealed to an appeals board composed of 10 of the board's directors, none of whom was involved in the earlier proceeding. Before the appeal began, one of the directors detailed his efforts to create a compromise prior to the original investigation. He then asked the attorney for plaintiff and the company if they wanted him to withdraw from the appeals board. The attorney, Schuman, accepted him as a member.

Gardner, the attorney who had left the ethics committee hearing, was present at the appeal. However, since he felt that his actions at the earlier hearing might somehow put him in the posture of a party, he had asked Schuman, another member of his firm, to present the case before the appeals board. Once again the company stressed that it, as an entity, was not a member of the board and therefore not subject to the board's jurisdiction. On plaintiff's behalf, Schuman explained that Gardner had to leave the hearing and declare that he was not representing Kendler; the attorney feared his presence would be construed as entering an appearance and would waive the defects in service of the complaint and notice of the hearing before it was determined whether the firm could represent both plaintiff and the Kendler Company.

The appeals board decision reversed the ethics committee recommendation as it pertained to the company for lack of jurisdiction and reversed and remanded in reference to plaintiff for failure to comply with the bylaw which required personal service of the complaint. The decision mandated further evidentiary hearings to be assigned to an ethics committee, "no member of which shall have participated in the original hearings or in this appeal." The reasoning behind the order was twofold: first, the term of the original committee had expired; and second, respondents had challenged the objectivity of the original committee. Although the appeals board felt the challenge to be groundless, to dispel any doubts as to that fact, a new committee, comprised of new members, was directed to conduct the further hearings.

All parties stipulated to the use of the original record at the second ethics committee hearing, because in the interim, Mr. Bracey had died. In addition, plaintiff presented new evidence: the testimony of both Robert Kendler and himself. The special committee still found against plaintiff, which decision was affirmed by the appeals board.

Plaintiff next filed an action for a declaratory judgment in the circuit court of Cook County, alleging that the appeals board had violated the board's bylaws by affirming a finding of failure to communicate an offer without evidence in the record to support it, by allowing a member of the ethics committee (Kahn) to sit on the appeals board in review of what was at least partially his own decision, and by hearing new testimony and evidence. The complaint alleged that these violations deprived plaintiff of a fair and impartial hearing. Defendants filed a motion to dismiss, which the trial court granted. This appeal followed.

■■ When plaintiff Kendler became a member of the Evanston North Shore Board of Realtors, he impliedly agreed to be bound by its rules and regulations, which might be regarded as "articles of agreement" to which all members are subject. (*Brown v. Harris County Medical Soc.* (Tex. Civ. App. 1917), 194 S.W. 1179, 1180; see *Ryan v. Cudahy* (1895), 157 Ill.

108, 41 N.E. 760; *Green v. Board of Trade* (1898), 174 Ill. 585, 51 N.E. 599.) These rules provided the board with the power to police its members by means of various sanctions, including expulsion. When a member is charged with a violation and an intra-association hearing is conducted, it is well established that considerable discretion should be allowed the society in the conduct of its internal affairs. The court's role has been limited to ascertaining whether the coercive power was exercised in conformity with the association's internal law and the member's fundamental fair hearing rights. See *Ryan v. Cudahy; Werner v. International Association of Machinists* (1956), 11 Ill. App. 2d 258, 137 N.E.2d 100; *Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 282 N.E.2d 728, *cert. denied, sub. nom. Certified Grocers of Illinois, Inc. v. Sparkle Food Center, Inc.* (1972), 409 U.S. 1007, 34 L. Ed. 2d 300, 93 S. Ct. 438; *Engel v. Walsh* (1913), 258 Ill. 98, 101 N.E. 222.

When an association is incorporated, as the Board of Realtors was here, it adopts bylaws, sometimes referred to as private laws, "to regulate, govern and control its own actions, affairs and concerns and its stockholders or members and directors and officers with relation thereto and among themselves in their relation to it." (8 Fletcher, Cyclopedia of Corporations §4166, at 622 (1966).) Thus, not only was plaintiff bound by the bylaws, but the board, too, was obligated to act in accord with its own bylaws.

Plaintiff has charged three violations of the bylaws. We feel that the first objection, to the findings of the board relative to the evidence presented, is really just an attempt to get judicial review of the merits. As set out above, it is not the function of the judiciary to substitute our judgment for that of the association who heard the evidence, observed the witnesses, and decided whether plaintiff refused to communicate a written offer to his principal.

Similarly, we feel that the second objection to the decision of the appeals board, that it heard new testimony in violation of its bylaws, is also without merit. The dispute centers on comments at the appeal regarding Bracey's behavior:

"MR. TOWNSEND: Well, again, I take exception to Mr. Bracy's attitude. He was gentle, understanding. He did not rant or rave or scream or raise his voice, and I went through all this in testimony. He was, I thought, most gentlemanly under the circumstances, and our meeting was quite pleasant. That's all I can say. He conducted himself in a very fine manner.

MRS. HARNDEN: I agree with that. I spent time with the Bracys. In the first place, he treated his wife and his daughter with a great deal of respect, as he did me, and it was just not in his nature—

CHAIRMAN RILEY: Excuse me. You can only refer to the testimony that has been given.

MRS. HARNDEN: I see. Well, I did not find him loud or abusive.

CHAIRMAN RILEY: All right. Are there any questions from the committee?"

It is apparent that these references to Bracey's behavior added little, if anything, to evidence presented to the special ethics committee, where Townsend had made substantially the same comments. When Harnden began to go into detail, Chairman Riley correctly stopped her, reminding all present of evidentiary limitations. No objection was made by plaintiff's counsel, and even if Harnden's statements might be construed as improper, absolute "technical accuracy" is not required in an association proceeding. *Yeomans v. Union League Club* (1922), 225 Ill. App. 234, 241; see *Pitcher v. Board of Trade* (1887), 121 Ill. 412, 419-21, 13 N.E. 187.

The final allegation raised by plaintiff concerns the participation of Kahn, chairman of the first ethics committee, in the second appeal. Plaintiff contends that this dual role violated an association bylaw. Defendants conceded this bylaw but argue that the intervening appeal and evidentiary hearing negate its impact. In the alternative, they contend that even if the bylaw applies to this situation, plaintiff has waived its protection by failing to object at the first possible moment, which would have been prior to the board appeal.

■■ Defendant suggests that Kahn's participation is similar to that of an interested director in a corporation vote. When his bias is discovered, his vote and presence are considered harmless if the same result would have attended despite his vote. However, since this is a quasi-judicial proceeding, we think an analogy to a court of law is more appropriate. It is elementary that no judge may sit in review of a case decided by him. (See *Lind v. Spannuth* (1956), 9 Ill. 2d 311, 315, 137 N.E.2d 360.) It is not only a matter of avoiding the appearance of impropriety, it is an essential element of the guarantee that those who sit in review have open minds. Defendants argue that Kahn's role was limited to the first hearing only, not the one which directly led to the appeal in question. However when the bylaw preventing the dual role is examined in the light of ensuring an open mind, it is apparent that once Kahn made a determination on the evidence against plaintiff, the bylaw would apply to bar Kahn's participation in an appeal. (See also *Cheney v. Ketcham* (1898), 5 Ohio N.P. 139, 144, 7 Ohio Dec. N.P. 183.) Further, the board's concern with allegations about possible prejudice or bias on the part of the initial ethics committee caused them to order that none of those members sit on the special committee. It is incongruous with this intent that the chairman of

the possibly tainted group should sit in review of the new untainted committee's findings. But that is precisely what happened, for what reason is not shown by the record; and, absent extenuating facts, the appeals board decision is void as contrary to its own rules of procedure. See *Berrien v. Pollitzer* (D.C. Cir. 1947), 165 F.2d 21; compare *Green v. Board of Trade* (1898), 174 Ill. 585 (bylaws followed).

Defendants contend that plaintiff has improperly waited to raise his objection to the composition of the appellate board until after a decision against him has been rendered. This argument is really one of waiver, that by not raising his objection before any proceedings before Kahn, plaintiff has impliedly consented to the board's composition. However this argument presumes knowledge of Kahn's dual role on the part of Schuman, plaintiff's attorney. No such knowledge can be presumed from the facts. Schuman was not the lawyer at the Kahn evidentiary hearing and the attorney at that hearing, Gardner, was not at the Kahn appeal. Further, at the first evidentiary hearing, Gardner explicitly stated that he was not the attorney of record for plaintiff and was not providing him with representation at that point. More substantiation for plaintiff's position is found in the numbers of people present at both the hearings and the appeal. One name, Henry Zander, appears as present at the second appeal without any designation of his status. Plaintiff claims that no indication was made whether those in attendance at the second appeal were voting or nonparticipating directors. Thus it was possible for Kahn to have been present merely as a spectator and not as a participating appeals board member, in which case there would have been no reason to object to his presence.

■ As we have recently held, albeit in the slightly different context of an administrative hearing, a challenge to the composition of an examining committee may be raised without waiver for the first time on judicial review "where injustice might otherwise result * * *." (*Olson v. Department of Registration & Education* (1978), 63 Ill. App. 3d 166, 168, 379 N.E.2d 802.) Plaintiff's challenge to the composition of the appeals board, a violation of the association bylaws, is within that limited area where the courts will intervene in a private society's actions. "[O]ne subjected to such disciplinary actions should be accorded a hearing before a fair and impartial tribunal. To hold otherwise would be a denial of essential rights." (*Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 394-95, 282 N.E.2d 728.) Plaintiff, as a member of the Board of Realtors, had agreed to the board's procedures and rules, and can object to their derogation. Kahn's dual role was clearly proscribed by the bylaws and not consented to by plaintiff. We also note the earlier described action of another director prior to the first appeal. That director revealed his connection to the case on his own initiative and allowed the parties to decide on the

propriety of his disqualification. Such an action on Kahn's part would have put the question of his participation before plaintiff, allowing him to make a knowing waiver of the board bylaw, if he so decided. Since we have found as a matter of law that the appeals board action was void as contrary to the board's own procedural guarantees and that this issue was not waived by plaintiff, we reverse the trial court's granting of the motion to dismiss and remand to that court with directions to reverse the findings of the appeals board and direct the Evanston North Shore Board of Realtors to grant plaintiff a new hearing in conformity with the board's bylaws consistent with the views herein expressed.

Reversed and remanded with directions.

PERLIN and HARTMAN, JJ., concur.