FOURTH DIVISION
 November 27, 1996











No. 1-94-3822

GARY LEE, individually and as parent and
next friend of RICKY LEE, a Minor,

 Plaintiff-Appellee,

 v.

LARRY SNYDER, individually and as
President of TEAM ILLINOIS; TEAM
ILLINOIS, upon information and belief an
Illinois not-for-profit association;
AMATEUR HOCKEY ASSOCIATION OF ILLINOIS,
INC., upon information and belief an
Illinois not-for-profit corporation; and
WINNETKA HOCKEY CLUB, upon information
and belief an Illinois not-for-profit
association,

 Defendants-Appellants.)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)Appeal from the
Circuit Court of
Cook County






No. 94 CH 8201






Honorable
Michael B. Getty,
Judge Presiding.

 JUSTICE CAHILL delivered the opinion of the court:
 Plaintiff Gary Lee, individually and as parent of 12 year
old Ricky Lee, sued the Amateur Hockey Association of Illinois
(AHAI) to rescind a contract, for a temporary restraining order,
and for other injunctive relief. Among other rulings, the trial
court found the contract had not been accepted and granted a
permanent injunction in favor of the plaintiff. Defendants
appeal. We reverse. 
 AHAI is a voluntary association which regulates amateur
youth hockey in Illinois among those who choose to join its
ranks. AHAI is governed by by-laws enforced by AHAI's board of
directors.
 AHAI created Team Illinois as a new AAA hockey team. AAA
teams are at the highest skill level among AHAI teams, with the
most skilled players. Some AHAI rules apply only to AAA teams,
including Team Illinois. They require AAA players and their
parents to sign agreements called "players cards." The players
cards require an exclusive commitment. The card reads in part:
 "You and your parents should be aware that the signing
 of this form immediately and permanently binds you to
 this team for the entire upcoming season and you may
 not play with another team with the exception of: (1)
 Your High School Team, (2) a registered Junior 'C' team
 (3) a registered House League Team." 
 Ricky Lee, with his parents approval, signed a player card
on July 8, 1994, to play for Team Illinois. He was named to the
team roster on August 1, 1994. In mid August, Ricky asked the
coach of Team Illinois to be released from the team. Plaintiff
claims the request for release was based upon misrepresentations
made to him about the commitments required of Ricky to play for
Team Illinois. Plaintiff learned that a request to be released
from Team Illinois must be made to the AHAI open committee. 
 On August 29, 1994, Ricky and his parents filed a grievance
under the AHAI by-laws with AHAI's open committee. They asked
that Ricky be removed from the Team Illinois roster. The
grievance alleged that: (1) the location of Team Illinois
practices and schedules created conflicts for Ricky; (2) the
Team's status would preclude playing better teams in the Michigan
National Hockey League and in Canada; (3) Saturday night games
would interfere with Ricky's social activities; (4) the first
out-of-state tournament conflicted with a personal commitment
Ricky had made; and (5) Ricky's school work precluded him from
participating at the AAA level. 
 In a letter dated August 30, 1994, the Open Committee
recommended that Ricky fulfill his obligation to Team Illinois. 
The committee ruled: (1) Ricky and his parents were provided with
enough information between the try outs in April and the signing
of the player card in July to make an informed decision about
signing the card; (2) they had time to reconsider the commitment
between July 8, 1994, and August 1, 1994, when Ricky was placed
on the roster; and (3) the request to remove was filed on August
29, 1994, 28 days after Ricky was placed on the roster.
 Ricky and his parents appealed to the AHAI board of
directors. A hearing was held on September 6, 1994. Testimony
was presented by AHAI, Gary Lee, and Hillary Lee. The Lees
alleged that material misrepresentations made by Robert Ross, a
recruiter for AHAI, had induced them to sign the player card and
they would not have signed the card had they known the
representations were untrue. The board, after reviewing the
evidence and hearing arguments from the parties, concluded that
the Lees had not been misinformed and refused to release Ricky
from the team.
 Plaintiff then filed a petition in the circuit court for a
temporary restraining order and sought rescission and other
injunctive relief. The complaint alleged that Ricky signed the
player card based on material misrepresentations and that the
player card was unenforceable because it had not been signed by a
Team Illinois representative.
 The court entered a temporary restraining order which read:
"(1) Defendant Winnetka Hockey Club to allow Ricky to try out
[for] teams in its organization and to skate with the club
pending further order of court; (2) defendant AHAI is enjoined
from taking any action of any kind against the Winnetka Hockey
Club or Ricky." 
 The court subsequently held a hearing for a permanent
injunction. The court then found Gary Lee, Hillary Lee, and
Ricky Lee to be credible witnesses and the witnesses for the AHAI
not credible. He further found that: Ricky was recruited by AHAI
and Team Illinois; Team Illinois made certain representations to
the Lees during the recruitment; Ricky signed an open player
registration form on July 8, 1994; the representations made to
the Lees on August 13, 1994, were false. The court found that
AHAI members Rob Ross and Greg Lee were unfamiliar with the rules
and regulations of AHAI and their lack of knowledge contributed
to the misrepresentations. The court also found that AHAI never
accepted the open player registration form because the form was
not signed by Rob Ross. The court further noted that the
plaintiff sought relief under the rules of AHAI and found:
 "the AHAI board made a decision refusing to release the
 plaintiffs from the Triple A Team Illinois Commitment
 based upon representations made to the Board by Jim
 Cline, Chair of the Open Committee, that he had
 interviewed Greg Lee, Rob Ross and Larry Snyder and did
 not believe that they had lied to the plaintiff and
 that the Open Committee recommended against releasing
 the plaintiff. The Court notes that Larry Snyder is a
 member of the Open Committee that testified (sic)
 disqualified himself; that the decision of the Open
 Committee and the board of AHAI was based upon Jim
 Cline's hearsay statement of Larry Snyder, Greg Lee and
 Rob Ross' self-serving statement which were not
 subjected to confrontation or scrutiny of any kind by
 anyone except Jim Cline. The court finds that the
 material misrepresentations *** above were of such a
 type as to require the relief sought by the plaintiff."
 The court then ordered: 
 "Team Illinois shall remove Ricky Lee from its roster
 as of July 8, 1994 and the purported open player
 registration card is declared null and void as having
 being induced by misrepresentation. The court further
 notes that it was never accepted by Team Illinois,
 never signed by any representative of Team Illinois. 
 Second: The court orders that AHAI shall remove Ricky
 Lee from any roster of Team Illinois or any list of
 Triple A players in the State of Illinois. Third: The
 court orders that AHAI its Board of Directors and its
 agents shall not sanction or otherwise interfere in any
 way or manner whatsoever with the plaintiff or any A or
 Double A hockey club on which the plaintiff wishes to
 play, which hockey club is also willing to accept the
 plaintiff as a player, including but not limited to the
 Winnetka Hockey Club. The court further orders that
 AHAI its Board of Directors and agents shall not
 sanction suspend or otherwise interfere with any person
 who has participated in any way in this court
 proceeding including reference to or exercising any
 provisions of Article 13 but not limited to those
 provisions. It is so ordered."
 AHAI first contends the court erred in overturning the
decision of a voluntary association. We agree.
 Voluntary associations have great discretion when conducting
their internal affairs, especially when their conduct relates to
the interpretation and enforcement of the association's rules and
regulations. Kendler v. Rutledge, 78 Ill. App. 3d 312, 316, 396
N.E.2d 1309 (1979). Judicial review of an association's conduct
is limited to whether the association exercised its power
consistently with its own internal rules and the members'
fundamental right to a fair hearing. Kendler, 78 Ill. App. 3d
312, 316, 396 N.E.2d 1309. As long ago as 1913 our supreme court
held:
 "In churches, lodges, labor unions, and other like
 voluntary associations, each person on becoming a
 member, either by express stipulation or by
 implication, agrees to abide by all rules and
 regulations adopted by the organization. [Citation.] 
 Courts will not interfere to control the enforcement of
 by-laws of such associations, but they will be left
 free to enforce their own rules and regulations by such
 means and with such penalties as they may see proper to
 adopt for their government." Engel v. Walsh, 258 Ill.
 98, 103, 101 N.E. 222 (1913).
 More recently, this court, in Proulx v. Illinois High School
Association, 125 Ill. App. 3d 781, 466 N.E.2d 620 (1984), cited
with approval the following quotation from 4 Am Jur. Associations
& Clubs sec. 17, at 466 (1936):
 "It is well established that courts will not interfere
 with the internal affairs of voluntary associations,
 except in such cases as fraud or lack of jurisdiction. 
 Accordingly, it is held that mandamus will not lie to
 regulate the affairs of unincorporated societies or
 associations, at least not in the absence of a
 permissive statute. Nor will an injunction be granted
 where the association is proceeding in accordance with
 its rules and within the scope of its jurisdiction. 
 The decisions of the tribunals of an association with
 respect to its internal affairs will, in the absence of
 mistake, fraud, collusion or arbitrariness, be accepted
 by the courts as conclusive. Moreover, it is held that
 the courts will not undertake to inquire into the
 regularity of the procedure adopted and pursued by such
 tribunals in reaching their conclusions." Proulx, 125
 Ill. App 3d 781, 787-88, 466 N.E.2d 620.
 On the rare occasions when our supreme court has relaxed the
rule of non-intrusion in the affairs of voluntary associations
absent mistake, fraud, collusion, or arbitrariness, the court has
found a substantial property, contract, or other economic right
that implicates due process. See Van Daele v. Vinci, 51 Ill. 2d
389, 394, 282 N.E.2d 728 (1972). No such right is alleged in the
pleadings, nor do we find one inferred from the nature of the
case. The right to play hockey in an amateur league of voluntary
participants is no more sacrosanct than the right to participate
in organized high school athletics, the issue in Proulx. 
 We are aware of the elaborate and minutely governed
structures that have evolved to oversee everything from pre-
school soccer leagues to the international monolith that is
Little League baseball. Judges who recall summer pick-up games
on the prairie with a lopsided ball wrapped in black friction
tape and winter hockey matches with a stone for a puck on a
frozen sanitary canal are probably the wrong people to exercise
judicial restraint in a case such as this. The quarrels that
erupt in an era when every aspect of a childhood game is
encrusted with a bureaucratic rule written by an adult seem ripe
for judicial intervention. 
 The temptation to intervene, to scold and then sermonize on
the joys of childhood, with dark reference to adults who spoil
the fun, is strong. It swirls up from a desire to revisit the
prairie and the canal. The irony is that the same desire
motivates those who volunteer to coach Little League and to form
amateur hockey leagues. Seen in this light, the wisdom of Engel,
a case from the era of the prairie and the frozen canal, becomes
clear.
 Here Ricky and Gary Lee availed themselves of the
procedures, rules, and regulations of the AHAI. The dispute was
initiated, examined, and resolved under AHAI's rules which govern
the parties' relationship. We find nothing in the record which
suggests mistake, fraud, collusion, or arbitrariness.
 The trial court finding of misrepresentations, even if
evidence of fraud, was based upon the trial court's evaluation of
the credibility of the witnesses before the open committee and
the board of directors. Absent findings of fact that are against
the manifest weight of the evidence, the credibility of witnesses
and the weight to be given their testimony was within the
province of the AHAI. Arlington Heights Federal Savings & Loan
Association v. Knight, 29 Ill. 2d 558, 194 N.E.2d 338 (1963)
(Courts may not reweigh evidence in administrative proceeding,
and reviewing court is limited to ascertaining if findings and
decision of administrative agency are against manifest weight of
the evidence).
 Without such evidence, or a finding that the AHAI did not
follow its own rules or denied plaintiff the right to a fair
hearing, the court should have declined to inquire into the
regularity of the procedure adopted and pursued by the AHAI in
reaching its conclusions. See Proulx, 125 Ill. App 3d 781, 787-
88, 466 N.E.2d 620.
 The record makes clear that the trial court here ignored the
cautionary language in Proulx and Engel, and not only conducted a
de novo review of the proceedings before the governing board of
the AHAI, but literally re-tried the case as if the AHAI
proceedings had not occurred. The trial court simply substituted
itself for the AHAI open committee and board of directors.
 The sua sponte findings the court made with respect to the
Dispute Resolution Procedure of the AHAI, which prompted the
permanent injunction entered by the court and its continuing
jurisdiction over the parties, was not an issue raised by either
party before the AHAI or the trial court, nor was the court's
interpretation of the procedure necessary to the resolution of
the issues before the court. But for the permanent injunction,
the matter before us would be moot. With the injunction still in
place, it is not.
 The record supports the contentions of the defendants that
the grievance procedures adopted by the AHAI in its Rules and
Regulations were complied with, and that AHAI's decision was not
the result of mistake, fraud, collusion, or arbitrariness. The
permanent injunction is vacated.
 Vacated.
 HOFFMAN, P.J., and THEIS, J., concur.