(No. 43855.—

AUGUST A. VAN DAELE *et al.*, Appellants, v. HENRY VINCI *et al.*, Appellees.

*Opinion filed March 30, 1972.—Modified on denial of rehearing May 25, 1972.*

SCHAEFER, J., took no part.
WARD, J., specially concurring.
UNDERWOOD, C.J., and DAVIS, J., dissenting.

THOMAS P. SULLIVAN, ROBERT E. PFAFF, ROBERT C. KECK, Jr., and ARTHUR M. SUSSMAN, all of Chicago (JENNER & BLOCK, of counsel), for appellants.

HARRY L. RUDNICK and PAUL D. RUDNICK, both of Chicago (RUDNICK & WOLFE, of counsel), for appellee Certified Grocers of Illinois, Inc.

W. DONALD McSWEENEY and THOMAS P. LUN-ING, both of Chicago (SCHIFF, HARDIN, WAITE, DORSCHELL & BRITTON, of counsel), for other appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

We granted leave to appeal from a reversal by the appellate court *(Van Daele v. Vinci, 129 Ill.App.2d 332)* of a judgment of the circuit court of Cook County permanently enjoining Certified Grocers of Illinois, Inc. (hereinafter Certified) from enforcing resolutions of Certified's board of directors (hereinafter the Board) to expel plaintiffs from membership in Certified or to take any punitive action against plaintiffs by reason of the resolutions.

The pleadings alleged that Certified is a private, voluntary organization of independent retail grocers doing business under the Co-operative Act (Ill.Rev.Stat. 1969, ch. 32, pars. 305–331) and the Business Corporation Act (Ill.Rev.Stat. 1969, ch. 32, pars. 157.1–157.167). Certified's purpose is to secure lower prices through large volume purchasing. It then sells these products to its members at a slightly increased price. After Certified pays its own operating expenses, a portion of the excess is refunded to the members as a rebate, and the remainder is used for its own purposes, *i.e.,* reserves, expansion and business loans to its membership.

On January 30, 1969, Certified's Board sent written notices to plaintiffs, Hickory Hills Super Mart, Inc. (hereinafter Hickory) and Sparkle Food Center, Inc. (hereinafter Sparkle), notifying them of a special Board meeting to be held on February 25, 1969. The purpose of

the meeting was to determine whether Hickory and Sparkle should be censured, suspended or expelled as members of Certified pursuant to the corporate bylaws. The charges against Hickory and Sparkle arose from the alleged activities of Adolph Kalchbrenner, a shareholder and president of Hickory, and Frank R. Guinta, a shareholder and officer of Sparkle. It was alleged that Kalchbrenner and Guinta "associated with the 'Certified Stockholders Committee for Fair and Better Management,' disrupted Certified's business, impeded the resolution of problems associated with Certified's construction program, spread false rumors and made untrue statements which were intended to and which did injure Certified's directors and officers, and engaged a public relations firm to publicize charges against Certified for the purpose of aiding the election of the Stockholders' Committee's nominees to the Board of Directors of Certified." (129 Ill.App.2d 332, at 336.) The notice also advised plaintiffs that each could be assisted by legal counsel during the proceedings.

Pending at this time was a derivative class-action suit, filed in the circuit court of Cook County, by Hickory, Sparkle and other shareholders of Certified, against the chairman and other members of the Board averring that the defendants knew or should have known of the alleged activities of one of Certified's employees whose malfeasance in the operation of Certified's building program resulted in the loss of large sums of money by Certified.

On February 21, 1969, plaintiffs amended their complaint adding a count in which they informed the court of the special board meeting and alleging, *inter alia,* that they would not receive a fair hearing before the Board because many of the Board members were defendants in the present action and that the Board was seeking retribution rather than acting in good faith in convening this disciplinary proceeding. Hickory and Sparkle prayed for injunctive relief to prevent the defendants "from

taking any action to censure, suspend or expel them from membership in Certified." (129 Ill.App.2d 332, at 336.) The trial court continued disposition of the equitable prayer until the Board acted on the pending charges.

At hearings before the Board on February 25 and April 9, 1969, plaintiffs made motions to dismiss the charges, to disqualify various Board members because of prejudice, and to preclude any Board member from participating if he might profit from plaintiffs' expulsions. These motions were denied.

The attorney for the Board then introduced various papers designated as exhibits, excerpts from sworn depositions, and trial testimony obtained in connection with other counts in the complaint. After presentation of this evidence, the Board again denied plaintiffs' motion to dismiss the charges.

Plaintiffs introduced proof which showed that they were members in good standing with Certified. Data on plaintiffs' rebates for prior years was also offered which indicated that during those years Sparkle had averaged approximately $40,700 and Hickory had averaged approximately $22,400 per year. No witnesses were presented by either side, although plaintiffs sought to call the Board chairman, who refused to testify, and the Board refused to request or direct him to do so. It then adopted resolutions excluding the plaintiffs from further membership in Certified.

Thereafter, the circuit court granted a temporary injunction and subsequently, after consideration of the Board's proceedings and exhibits, the court permanently enjoined Certified from expelling plaintiffs from membership in accordance with the Board's resolution of April 9, 1969. On appeal the appellate court reversed.

Plaintiffs now argue that the expulsion proceedings were so grossly unjust that they violated fundamental principles of due process of law. To support this position plaintiffs contend that the Board could not fairly hear

these matters because many of its members were involved in the events which gave rise to the charges.

Certified's bylaws provide that a member can only be expelled by "the affirmative vote of not less than two-thirds of the directors present at a board meeting." The record before us indicates that the Board preferred the charges against plaintiffs and the resolutions to expel Hickory and Sparkle were adopted by vote of eleven Board members of which seven were defendants in the pending lawsuit. Both Hickory and Sparkle were expelled by ten affirmative votes. Thus it is apparent that at least six defendants voted to expel each plaintiff.

Furthermore, plaintiffs maintain that charges were initiated against them by the Board and the evidence was introduced by the same attorney who was representing the seven Board members in the instant case. Thus the directors were placed in the contradictory position of being both prosecutors and judges.

To refute these contentions defendants maintain that plaintiffs were allowed all appropriate protections in that Hickory and Sparkle were given notice of the pending charges and permitted to discredit these charges at the hearings. In addition plaintiffs were granted every request for information or production of documents. Moreover, defendants assert that the Board was not precluded from hearing the allegations simply because the Board had originated the charges. (Green v. Board of Trade, 174 Ill. 585.) Defendants finally argue that since the corporate bylaws exclusively authorize expulsion by Board action, the allegation of bias is immaterial.

While agreeing that the Board did follow the procedure set out in the bylaws for disciplinary hearings, we cannot find the defendants' final contention persuasive. There are too many factors indicating that the proceedings were in fact not good faith disciplinary hearings, but in reality, an attempt to silence and censure dissident members of the association. The record clearly shows that

the Board was comprised of seven members that were also defendants in the pending derivative action. The allegations against the plaintiffs were supported entirely by the depositions, excerpts of record, and statements taken for use in the suit which were introduced in an attempt to authenticate various exhibits. The Board's decision to expel plaintiffs was based on at least six of the defendants voting against the plaintiffs. The bylaws provide that a commission could be appointed to investigate the conduct of members and report to the board independently to avoid the possibility of bias in situations where the board members and report to the Board independently to avoid possibility that the plaintiffs were not given a fair hearing.

Although the courts in this State have traditionally been reluctant to interfere in the internal operations of associations, this strong possibility that an important economic interest of the plaintiffs was affected by an improper administrative proceeding gives the court power and the duty to act. We agree with the view expressed by the Supreme Court of New Jersey that said: "We are here concerned with and therefore deal solely with an organization, membership in which may here, in the language of *Trautwein* [*Trautwein v. Harbourt, 40 N.J. Super. 247, 123 A.2d 30*], be viewed as an economic necessity; in dealing with such an organization, the court must be peculiarly alert to the need for truly protecting the public welfare and advancing the interests of justice by reasonably safeguarding the individual's opportunity for earning a livelihood while not impairing the proper standards and objective of the organization. [Citation.] " *Falcone v. Middlesex County Medical Soc., 34 N.J. 582, 592, 170 A.2d 791, 796-7.*

We recognize that strict adherence to judicial standards of due process would be arduous and might seriously impair the disciplinary proceedings of voluntary associations such as retail grocers. *(Gottlieb v. Economy Stores, Inc., 199 Va. 848, 102 S.E.2d 345.)* However, one subjected to such disciplinary actions should be accorded a

hearing before a fair and impartial tribunal. To hold otherwise would be a denial of essential rights. We agree "that a private organization, particularly if tinged with public stature or purpose, may not expel or discipline a member adversely affecting substantial property, contract or other economic rights, except as a result of fair proceedings which may be provided for in organization by-laws, carried forward in an atmosphere of good faith and fair play." *(McCune v. Wilson (Fla. 1970), 237 So.2d 169, 173.)* The rationale for this position as enunciated in *McCune* results from the character of the organization, *i.e.* its assumption of a purpose which exceeds merely that of a social organization and its endeavor to benefit from various State and Federal laws.

We are mindful of the caveat set forth in *Hall v. Morrin (Mo.Ct.App. 1927), 293 S.W. 435,* wherein the court expressed the view that one who faces disciplinary proceedings before a tribunal in a voluntary association need only vilify the entire organization thereby rendering all members of that body incompetent to try him, and, consequently, rendering the group totally incapable of defending itself against the vicious, unwarranted attacks of a member. If such a situation were to develop, however, we believe that the association is capable of formulating proper disciplinary procedures. See *Madden v. Atkins, 4 App.Div.2d 1, 162 N.Y.S.2d 576.*

In the instant case the trial court stated that "in the entire proceedings here, unfortunately the record indicated significant personality differences which *** played a large part in the actions which were taken ***." In view of this latter impression we must conclude that certain members of the Board were not impartial.

Therefore we hold that under the facts presented in the instant case plaintiffs were denied due process of law at their disciplinary hearings. Consequently, the resolution expelling plaintiffs from Certified are invalid, and the circuit court properly enjoined Certified from enforcing the resolutions.

Plaintiffs further contend that the expulsions should be enjoined because no evidence was introduced at the Board hearings to support any of the five charges brought against Hickory and Sparkle. However, we need not pass upon this issue or other contentions advanced by plaintiffs because of our disposition of the primary issue.

For the aforementioned reasons the decision of the appellate court is reversed and the injunction order of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE WARD, specially concurring.

MR. JUSTICE SCHAEFER took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE UNDERWOOD, dissenting:

I cannot agree that the circumstances of this case justify the substantial departure from settled law which the majority opinion represents. As the well-considered opinion of Mr. Justice Drucker, speaking for the appellate court, notes, the heretofore prevailing rule, as announced in the earlier opinions of this court, has been that judicial supervision and intervention were generally limited to a determination that the voluntarily agreed to provisions of the bylaws and rules of the organization were adhered to in resolving disagreements among its members. *People ex rel. Rice v. Board of Trade, 80 Ill. 134; Sturges v. Board of Trade, 86 Ill. 441; Pitcher v. Board of Trade, 121 Ill. 412; Ryan v. Cudahy, 157 Ill. 108; People ex rel. Keefe v. Women's Catholic Order of Foresters, 162 Ill. 78; Board of Trade v. Nelson, 162 Ill. 431; Green v. Board of Trade, 174 Ill. 585; Bostedo v. Board of Trade, 227 Ill. 90; Engel v. Walsh, 258 Ill. 98; Werner v. International Association of Machinists, 11 Ill.App.2d 258.* See also *Parsons College v. North Central Association of Colleges and Secondary Schools (N.D. Ill. 1967), 271 F.Supp. 65.*

The question as to the extent to which due process standards applicable to public agencies may or should be imported into the internal operations of associations which are basically private in nature is not one which I find easily answered. The answer provided by the majority opinion, however, is completely superficial. That answer is that "the bylaws provide that a commission could be appointed to investigate the conduct of members and report to the board independently to avoid the possibility of bias." The superficiality of this solution is that it is not the partiality of the investigators which is the real issue—it is the bias alleged to exist among members of the Board. Certainly appointment of a disinterested committee to investigate does little to remedy partisanship on the part of members of the adjudicatory body (the Board) to which the committee reports. It is alleged bias in that body which is the real issue here. The appointment of a commission does nothing to resolve it.

It is clear that, broadly stated, courts have adhered to a policy of non-intervention in cases of refusal to admit or expulsion from social, fraternal and religious organizations *(Falcone v. Middlesex Couty Medical Society, 34 N.J. 582, 170 A.2d 791* and cases there cited; Sheridan, Judicial Review of Expulsions From Private Associations, 52 I.B.J. 842.) It is equally clear, however, that an increasingly greater willingness to intervene is manifested in those cases dealing with professional associations exercising virtually monopolistic control in which membership is essential or of substantial importance to the individual in earning a livelihood. *Falcone* and cases there cited.

The basis for judicial reversal of association action has, again speaking broadly, ordinarily been a violation of the constitution or bylaws of the association, or, that the association rules and proceedings violate concepts of fundamental fairness, or, that the association action was motivated by prejudice or bad faith. *(Sheridan, pp. 847-8.)* There has been, as noted by the majority, no violation of

the association bylaws in the case before us, nor do these regulations violate concepts of basic procedural justice. The sole ground for reversal relied upon by the majority is that members of the board of directors which voted to expel plaintiffs may have been prejudiced by reason of the fact that the Board had instituted the charges and had been made defendants· in prior litigation initiated by plaintiffs. The court's opinion agrees that the Board is "not necessarily disqualified," but holds the Board should have appointed an investigating committee "free from any assertions of bias and agreed to be bound by the committee's report."

In my judgment the circumstances of this case do not warrant the conclusion reached by the court. Certified, while a sizeable association, can scarcely be thought to be monopolistic. Its members, including plaintiffs, agreed to the terms of its bylaws by applying for membership. There is nothing therein which offends a sense of fundamental fairness except the fact that some members of the Board which is vested with the ultimate responsibility for disciplining the membership may, as a result of plaintiffs' prior activities, be predisposed in their approach to the expulsion question. But it is precisely this same body which is presumably the most knowledgeable group concerning the welfare and best interests of the association. Similarly, it is this group which is likely to be most aware of, and best able to accurately assess the effect of, the conduct of the association's members. To say that such awareness prevents them from exercising the authority vested in them by agreement of the membership, including plaintiffs, is likely, I believe, to seriously impair the operating efficiency of such associations. One effect will be to enable dissident members, by the simple expedient of criticizing all other members, to render the association and its members incompetent to try them. While the majority optimistically states that, given such situation, "we believe that the association is capable of formulating

proper disciplinary procedures", I believe it preferable to avoid that possibility.

In short, while agreeing that there are circumstances wherein judicial intervention in the operation of voluntary associations is not only appropriate, but is necessary, I believe that power should be used sparingly and only under circumstances more compelling than those existing here.

I would affirm the judgment of the appellate court.

MR. JUSTICE DAVIS joins in this dissent.