EDIR B. SIQUEIRA, M.D., Ph.D., Plaintiff-Appellant, v. NORTHWEST-
ERN MEMORIAL HOSPITAL, Defendant-Appellee.

First District (4th Division)   No. 84—617

Opinion filed March 14, 1985.

Richard J. Phelan, of Phelan, Pope & John, Ltd., of Chicago, for appellant.

Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Plaintiff, Dr. Edir B. Siqueira, a board certified neurosurgeon, was an active member of the medical staff at Northwestern Memorial Hospital (Northwestern), the defendant, until his clinical privileges were suspended indefinitely by Northwestern's board of directors on July 1, 1980. Dr. Siqueira filed an action in the circuit court of Cook County for injunctive relief seeking to have the indefinite suspension be declared void. At the close of Dr. Siqueira's case, the trial court granted Northwestern's motion for a directed verdict. This appeal followed.

Dr. Siqueira contends on appeal that the trial court erred in entering judgment for Northwestern on the grounds that Northwestern's board of directors had no authority to suspend his clinical privileges under the Northwestern Memorial Hospital medical staff bylaws and that he was denied his right to procedural due process. By agreement of the parties, the trial court had limited the trial to the foregoing issues. Consequently, the facts underlying the reason for the suspension were never an issue in the lower court proceeding and are not questioned here on appeal.

Dr. Siqueira was a neurosurgeon on the attending staff of Northwestern from 1962 until June 13, 1979, when the president of Northwestern informed him that pursuant to article V, section 1, of the medical staff bylaws, his clinical privileges were summarily suspended. Dr. Siqueira requested a hearing in accordance with article V, section 3, of the medical staff bylaws. On November 7, 1979, an *ad hoc* hearing committee was convened. Hearings were conducted between November 1979 and April 1980, during which time Dr. Siqueira was given an opportunity to present and cross-examine witnesses and

to introduce documentary evidence. On April 16, 1980, the *ad hoc* hearing committee issued its report and written determination that the summary suspension of Dr. Siqueira be modified and that Dr. Siqueira be returned to a restricted practice of neurosurgery. On April 23, 1980, in a letter from Northwestern's chief of staff, Dr. Siqueira was sent a copy of the *ad hoc* hearing committee's report and was informed that the report was also being forwarded to Northwestern's board of directors and to the medical executive committee and that he had the right to request review by an appellate review committee of the *ad hoc* hearing committee's report pursuant to article V, section 6, of the medical staff bylaws. Dr. Siqueira accepted the *ad hoc* hearing committee's recommendation that he be returned to the restricted practice of neurosurgery, and he did not seek an appeal.

The medical executive committee met on June 9, 1980, to consider the recommendation and findings of the *ad hoc* hearing committee. After reviewing their report, the medical executive committee adopted a motion stating that the June 13, 1979, summary suspension of Dr. Siqueira's clinical privileges by the president of Northwestern be maintained for an indefinite period.

On July 1, 1980, the recommendation of the medical executive committee was brought before Northwestern's board of directors, at which time they adopted the medical executive committee's determination and, consequently, Dr. Siqueira's clinical privileges were indefinitely suspended.

Dr. Siqueira first asserts that the indefinite suspension of his clinical privileges is void based on two alleged violations by Northwestern of the medical staff bylaws. The first alleged violation occurred when the medical executive committee recommended to the board of directors that he be indefinitely suspended. The second alleged violation occurred when the board of directors adopted the medical executive committee's recommendation over the determination of the *ad hoc* hearing committee to modify Dr. Siqueira's suspension and to allow him to return to the restricted practice of neurosurgery.

The medical staff of Northwestern is governed by the Northwestern Memorial Hospital medical staff bylaws. The preamble to the medical staff bylaws states that the staff is responsible for the quality of medical care at Northwestern "subject to the ultimate responsibility and authority of the Hospital Board of Directors." Article III, section 5A, states that a member of the staff may for cause be restricted, terminated or have his privileges removed by the board of directors upon the recommendation of the medical executive committee. However, before such action shall become final, a staff member is

entitled to a hearing, as provided in article V of the medical staff by-laws. Article V establishes the procedures for hearings following summary suspension of clinical privileges. When a hearing is requested, the chief of staff is required to designate an *ad hoc* hearing committee consisting of at least five doctors on staff, a majority of whom shall have been former chiefs of the medical staff at Northwestern. The *ad hoc* hearing committee is required to conduct a hearing where the parties may call witnesses and introduce documentary and physical evidence. The hearings are conducted, according to section 5(7) of article V, for "the purpose of resolving, on an intra-professional basis, matters bearing on professional competency and conduct." The *ad hoc* hearing committee is then required under section 5(10) of article V to make a written report with its recommendation and submit it to the chief of staff, who is required to forward it "for information" to the medical executive committee and "for resolution" by Northwestern's board of directors. Within 15 days after the delivery of the *ad hoc* hearing committee report, a staff member may request, pursuant to section 6, article V, review by an appellate review committee, consisting of not less than seven members of the board of directors, one of whom shall be a physician.

Dr. Siqueira argues that the medical executive committee violated his rights protected under the medical staff bylaws because it usurped the function of the *ad hoc* hearing committee when it recommended that his indefinite suspension be maintained. Under article VIII, the medical executive committee consists of approximately 20 members, including the chief of staff of Northwestern and the chairpersons of the various departments, all of whom, with the possible exception of three members, are physicians. As defined by article VIII, section 4, the duties of the medical executive committee are "to formulate and implement the policies of the Staff and to make recommendations to the Board of Directors of the Hospital on those matters which require action of that body." In furtherance of its duties, section 4, subsections 1 through 10, provides that the medical executive committee shall, among other things: represent and act on behalf of the staff, "subject to such limitations as may be imposed by these Bylaws"; recommend action to the hospital administration on all matters which are "of a medical-administrative nature"; review appointments, reappointments and promotions of the staff and make recommendations regarding those to the board of directors of Northwestern; and receive and act upon committee recommendations and reports.

Dr. Siqueira points out that as article V, section 5, provides that the *ad hoc* hearing committee's report be forwarded to the medical

executive committee "for information," the medical executive committee, which is "subject to such limitations as may be imposed by these Bylaws," under section 4(1) of article VIII, has limited authority under the medical staff bylaws to only receive the report of the *ad hoc* hearing committee for information. Furthermore, Dr. Siqueira contends that unlike the *ad hoc* hearing committee, which is comprised solely of physicians, who are charged with the responsibility of resolving the matter of suspensions "on an intra-professional basis," the medical executive committee is not similarly empowered under the medical staff bylaws and is not capable of making "on an intra-professional basis" determinations bearing on professional competency and conduct.

■ We believe that the duties of the medical executive committee under article VIII, section 4, are more expansive than those proposed by Dr. Siqueira. While the medical executive committee's power to represent and act on behalf of the medical staff is circumscribed by section 4(1), Dr. Siqueira's argument ignores the additional duties of the medical executive committee, as noted earlier, in section 4. Specifically, the medical executive committee has a duty under section 4(2) to make recommendations to the board of directors generally on matters which require action by the board, including matters of a medical-administrative nature; to review disciplinary problems under section 4(3); and under section 4(5) to review clinical privileges every two years and recommend to the board of directors changes it deems appropriate. Furthermore, it has the authority to review reappointments under section 4(4). Thus, these provisions grant the medical executive committee the authority to make a recommendation to the board of directors with regard to the suspension of Dr. Siqueira.

■ Dr. Siqueira further argues that the board of directors was required to adopt the *ad hoc* hearing committee's conclusion rather than the recommendation of the medical executive committee. In support of this contention, Dr. Siqueira makes the identical argument that as the medical staff bylaws provide for a hearing before a peer group of doctors whose function is to resolve matters concerning professional competency and conduct, the board of directors, which consists of 70 members, of whom only seven are doctors, has neither the authority under the medical staff bylaws nor the expertise to resolve on an "intra-professional basis" matters bearing on the summary suspension of medical staff. Otherwise, Dr. Siqueira maintains, the protections of the substantial interest a doctor has in his appointment as a member of a clinical staff at a hospital, an interest that should be protected from arbitrary and capricious decisions, will be reduced to a sham.

The difficulty with Dr. Siqueira's argument is that it requires the board of directors to accept a recommendation of the *ad hoc* hearing committee in its entirety. The preamble to the medical staff bylaws states that the medical staff is subject to the ultimate responsibility and authority of the board of directors and article XIII of the medical staff bylaws concludes that nothing in the bylaws "shall abridge the right of the Board of Directors of the Hospital to take such actions as seem to them necessary or desirable under the circumstances." The hearing procedure itself provides that the report of the *ad hoc* hearing committee is remanded to Northwestern's board of directors for its "resolution." The contention of Dr. Siqueira that under the medical staff bylaws the *ad hoc* hearing committee report must stand is outweighed by the clear reservation to the board of directors of the ultimate authority to the board of directors to maintain the indefinite suspension. Accordingly, we find that no violation of the bylaws occurred.

As an adjunct to this argument, Dr. Siqueira contends that counsel for Northwestern made a binding admission that the board of directors had no authority to disregard the report of the *ad hoc* hearing committee. This issue arose when the trial court asked defense counsel hypothetically that if the medical executive committee had recommended, contrary to what they did in this case, that a doctor should remain on the staff, whether the board of directors must rubberstamp that decision. Counsel responded that the board of directors would be taking a chance if they disregarded medical input and further that the board of directors would be violating the medical staff bylaws because, as the board is composed mostly of laymen, the board must rely on doctor input.

We find it unnecessary to consider this matter because it does not resolve the issue presented in the instant case; that is, the construction of the medical staff bylaws. As we stated above, under the medical staff bylaws the board of directors reserves the power to make the final resolution. Counsel's chance remark to the hypothetical question neither involves the construction of the bylaws nor changes the clear meaning of the bylaws.

■ Finally, Dr. Siqueira asserts that apart from Northwestern's failure to follow the medical staff bylaws, the actions of the board of directors in imposing an indefinite suspension over the recommendation of the *ad hoc* hearing committee was in contravention of his right to procedural due process. Dr. Siqueira maintains that under due process he was entitled to notice and an opportunity to be heard before the indefinite suspension was imposed. Specifically, he argues he was

not afforded due process in several respects: that he was not informed by Northwestern that it was considering suspending his privileges following the recommendation of the *ad hoc* hearing committee; that he was not informed of the basis for the indefinite suspension or why Northwestern believed an indefinite suspension was warranted when the *ad hoc* hearing committee had decided to lift the suspension; and that he was denied an opportunity to be heard at the June 9, 1980, meeting of the medical executive committee and at the July 1, 1980, meeting of the board of directors. Thus, Dr. Siqueira here is making the alternative argument that regardless of whether the medical staff bylaws had been complied with, the actions of the medical executive committee and the board of directors were fundamentally unfair because they did not provide for notice and the opportunity to be heard before the indefinite suspension was imposed.

While it is true, as Dr. Siqueira points out, that as expulsion from membership in voluntary associations may affect economic and property interests, thereby triggering due process protections (*Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 394, 282 N.E.2d 728, *cert. denied* (1972), 409 U.S. 1007, 34 L. Ed. 2d 300, 93 S. Ct. 438; *Treister v. American Academy of Orthopaedic Surgeons* (1979), 78 Ill. App. 3d 746, 396 N.E.2d 1225; *Virgin v. American College of Surgeons* (1963), 42 Ill. App. 2d 352, 192 N.E.2d 414), voluntary associations need not accord members due process to the extent they are protected under the Federal Constitution. Rather, voluntary associations should accord members subject to such disciplinary actions a hearing before a fair and impartial tribunal, which may be provided for under the organization's bylaws. *Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 394-95, 282 N.E.2d 728; *Rosee v. Board of Trade* (1976), 43 Ill. App. 3d 203, 236, 356 N.E.2d 1012, *cert. denied* (1977), 434 U.S. 837, 54 L. Ed. 2d 99, 98 S. Ct. 127; *Virgin v. American College of Surgeons* (1963), 42 Ill. App. 2d 352, 369, 192 N.E.2d 414; *McCreery Angus Farms v. American Angus Association* (S.D. Ill. 1974), 379 F. Supp. 1008, 1019, *aff'd* (7th Cir. 1974), 506 F.2d 1404 (unpublished opinion).

■ Before Dr. Siqueira's privileges were suspended, at his request and in accordance with the medical staff bylaws, a hearing before the *ad hoc* hearing committee was convened, at which time he was allowed to answer the charge. The medical executive committee, and ultimately the board of directors, reviewed the *ad hoc* hearing committee's recommendation. We conclude that as Dr. Siqueira makes no contention that he did not receive a fair and impartial hearing before the *ad hoc* hearing committee or that the decisions of the medical executive committee and the board of directors were biased and arbi-

trary, Dr. Siqueira was not deprived of due process when the medical executive committee and the board of directors, in compliance with Northwestern's bylaws, later acted to impose an indefinite suspension of Dr. Siqueira's clinical privileges.

■ Moreover, we find that the medical staff bylaws are not inherently unfair. The bylaws specifically provide that the board of directors maintains the power of ultimate resolution. We find that vesting final authority in the board of directors is consistent with Northwestern's duty to the community in rendering quality health care and its own interest in limiting Northwestern's potential liability by employing competent doctors on its staff. See *Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, 415, 232 N.E.2d 776.

Accordingly, we find that Northwestern did not violate its medical staff bylaws and did not deny Dr. Siqueira procedural due process when it indefinitely suspended his clinical privileges.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON and LINN, JJ., concur.