627 F.Supp. 39 (1984)
Stanley M. PARISER, M.D., Plaintiff,
v.
CHRISTIAN HEALTH CARE SYSTEMS, INC., Defendant.
No. 84-293C(5).
United States District Court, E.D. Missouri, E.D.
July 23, 1984.
On the Merits January 17, 1986.
*40 Anthony J. Sestric, Anne O. McCarthy, St. Louis, Mo., for plaintiff.
Coffelt & Coffelt, Kemper R. Coffelt, Clayton, Mo., Armstrong, Teasdale, Kramer & Vaughn, Richard A. Oertli, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
The matter before the Court is the defendant's motion to dismiss Count II of the complaint. The plaintiff has filed a memorandum in response.
The plaintiff, a physician, had certain staff privileges at the defendant corporation's Illinois hospital. The privileges were terminated. Count II alleges that the termination was done without procedural due process guaranteed by the Fourteenth Amendment. Although the hospital is privately owned, the complaint alleges that the termination constituted state action because the defendant receives public funds, enjoys tax benefits, has a virtual monopoly on health care within a two-county area, and is subject to pervasive regulation. The plaintiff's memorandum adds that the hospital performs a public function. In its motion, the defendant argues that the termination was not state action.
State action is not established merely because the hospital receives public funds, enjoys tax benefits, is subject to pervasive state regulation and performs a public function. These factors must be related in some way to the hospital's decision to terminate without procedural due process. There is state action "only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Lubin v. Crittenden Hospital Association, 713 F.2d 414, 415 (8th Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). See also Briscoe v. Bock, 540 F.2d 392 (8th Cir. 1976).
The doctor plaintiffs in Lubin and Briscoe did not allege that their hospitals possessed monopoly status, but Briscoe did note that monopoly status is not by itself determinative. 540 F.2d at 395. When monopoly status is aggregated with the other factors, there is still not a sufficient connection between the State and the termination. Although monopoly status makes the termination more burdensome, that does not mean that the State is more responsible for the hospital's choice of termination procedures. "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982).
The allegations of the complaint are insufficient to establish state action. Accordingly,
IT IS HEREBY ORDERED that the defendant's motion to dismiss Count II be and is GRANTED.
IT IS FURTHER ORDERED that Count II be and is dismissed with leave to amend within ten (10) days of the date of this order.

*41 ON THE MERITS
Plaintiff, Stanley M. Pariser, M.D., brought this action in a three-count complaint against Christian Health Care Systems, Inc. Count One is for damages arising from a contract breach. Count Two requests damages for violation of the Sherman Act. Count Three requests damages for the tort of intentional infliction of emotional distress. After trial, plaintiff requested the Court to allow plaintiff to amend his complaint to add a fourth count for tortious interference with contract.
This matter is before the Court for a decision on the merits following a three-day bench trial. After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties and the applicable law, the Court hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

Findings of Fact
Plaintiff has been an Illinois resident since 1965 and was an Illinois resident at the time this case was filed. Plaintiff received his medical degree in 1949 and interned at the Jersey City Medical Center. After completing his residency, plaintiff spent the next twenty-eight years, from 1952 to 1980, at three Veteran's Administration Hospitals. Plaintiff is a board certified internist. Plaintiff is licensed to practice medicine in Missouri, Illinois and Ohio but has practiced medicine only in the State of Illinois since 1965.
The Southern Medical Center, Inc., is a hospital located in Cairo, Illinois. Defendant, Christian Health Care Systems, Inc., provides management and administrative services to the Southern Medical Center. Christian Health Care Systems is a Missouri corporation.
In 1980, plaintiff applied for admission to practice at the Anna Mental Health Center in Anna, Illinois. After plaintiff applied he was granted temporary privileges and placed on a six-month probationary period. At the end of the probationary period, plaintiff was not granted permanent privileges at the hospital. Basically, plaintiff was fired.
Sometime around March, 1981, plaintiff moved to Cairo, Illinois where he was employed by Community Health Services, Inc., a not-for-profit, federally funded health care provider in the Alexander/Pulaski Counties of Southern Illinois. As a condition of his employment, plaintiff applied for medical hospital privileges at the Southern Medical Center on March 1, 1981. Shortly thereafter, Southern Medical Center granted plaintiff hospital admitting privileges.
Community Health Services, Inc. employed plaintiff until March, 1982. During the spring of 1982, plaintiff established a private practice of medicine in Cairo. Southern Medical Center renewed plaintiff's hospital admitting privileges in March, 1982. Although plaintiff is a board certified internist, a substantial portion of his medical practice was devoted to general, family and pediatric medicine. In June, 1982, plaintiff applied to the Missouri Delta Community Hospital in Sikeston, Missouri for privileges. Plaintiff omitted his affiliation with the Southern Medical Center and his prior affiliation with the Anna Mental Health Center. The Sikeston Hospital took no definitive action regarding plaintiff's application.
In September, 1982, Ben Felton was hired as the hospital administrator of the Southern Medical Center. After assuming the job as hospital administrator, Felton reviewed the hospital's bylaws, staff records and evaluated the quality of the hospital personnel. During his review, Felton found that one of the physicians on the hospital staff was not admitted to practice medicine in Illinois. Pursuant to the summary dismissal rules in the hospital's bylaws, the physician was dismissed from the staff. Following this discovery, Felton became concerned with the qualifications of other staff personnel and decided to evaluate the seven members of the medical staff of the 44-bed hospital.
On the application for admitting privileges to the Southern Medical Center, one section of the application addresses the issue *42 of any disciplinary action which may have been taken against the applicant relating to the practice of medicine. Three questions in the disciplinary section of the application are important to this case. The questions ask if the applicant had: (1) ever been denied membership on a hospital medical staff, (2) ever had his privileges at any hospital suspended, revoked or not renewed and (3) ever been denied membership or renewal of membership or had been subject to disciplinary action in any medical organization. Plaintiff answered "no" to each of the three questions. One of the paragraphs at the end of the application for admitting privileges states that: "I fully understand that any significant mis-statements or omissions from this application constitute cause for denial of appointment or cause for summary dismissal from the medical staff. All information submitted by me in this application is true to my best knowledge and belief."
During his investigation and evaluation of plaintiff's credentials, Felton contacted Dr. Wayne Isaacs, the administrator of the Anna Mental Health Center during plaintiff's employment there. In a phone conversation, Felton and Isaacs reviewed plaintiff's application for privileges at the Southern Medical Center. Isaacs told Felton that during his probationary period at Anna, plaintiff had his privileges suspended and had been refused membership to the staff.
On October 22, 1982, the executive committee of the medical staff held a meeting. The members of the executive committee present during the meeting were Dr. Charles Yarbrough, Dr. Victor Surpris, Dr. Crisostomo Lozada, Ben Felton and Pat Burt. Prior to the time Felton became administrator of the Southern Medical Center, Dr. Surpris had initiated an investigation into plaintiff's competency and willingness to cooperate and work with the other doctors and the nursing staff at the hospital. However, the meeting of October 22nd was called to review plaintiff's privileges since he had given false answers on his application for privileges at the hospital. Felton requested the executive committee to decide whether a review of the charges should be made or whether plaintiff's privileges should be curtailed. The executive committee decided to curtail plaintiff's privileges due to the false answers given on his application. The executive committee made the decision effective immediately, pending a complete new application by plaintiff.
The executive committee's action was taken pursuant to Article VII, Section Two of the hospital's bylaws dealing with summary suspension. Section Two states:
Section 2. Summary Suspension

a. Any one of the followingthe chairman of the executive committee, the president of the medical staff, a chief of service, the chief executive officer and the executive committee of either the medical staff or the governing body shall each have the authority whenever action must be taken immediately in the best interest of patient care in the hospital, to summarily suspend all or any portion of the clinical privileges of a practitioner, and such summary suspension shall become effective immediately upon imposition.
b. A practitioner whose clinical privileges have been summarily suspended shall be entitled to request that the executive committee of the medical staff hold a hearing on the matter within such reasonable time period thereafter as the executive committee may be convened in accordance with Article VIII of these bylaws.
c. The executive committee may recommend modification, continuance or termination of the terms of the summary suspension. If, as a result of such hearing, the executive committee does not recommend immediate termination of the summary suspension, the affected practitioner shall, also in accordance with Article VIII, be entitled to request an appellate review by the governing body, but the terms of the summary suspension as sustained or as modified by the executive committee shall remain in effect pending *43 a final decision thereon by the governing body.
d. Immediately upon the imposition of a summary suspension, the chairman of the executive committee or responsible chief of service shall have authority to provide for alternative medical coverage for the patients of the suspended practitioner still in the hospital at the time of such suspension. The wishes of the patients shall be considered in the selection of such alternative practitioner.
Plaintiff's response to the executive committee's action was a letter in which he demanded reinstatement of his privileges. However, plaintiff did not request a hearing.
The Southern Medical Center does not provide any services outside the State of Illinois. There are eight hospitals within approximately a thirty-five mile radius of Cario, Ilinois. Plaintiff never practiced at any of the eight hospitals, nor did he apply for admitting privileges at any of the area hospitals, except the one in Sikeston, Missouri. Approximately ninety-five percent of plaintiff's patients were residents of Alexander or Pulaski Counties. Plaintiff rearely transferred other patients to other hospitals. Approximately ninety-eight percent of the Sourthern Medical Center's patients are from the State of Illinois.

Conclusions of Law

Count I  Breach of Contract
This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332. The parties agree that the law of the State of Illinois applies to Count I.
Plaintiff seeks damages for the alleged breach of contract due to the executive committee's decision curtailing plaintiff's privileges at the Southern Medical Center. Once a physician is allowed admitting privileges to a hospital, the existence of the governing bylaws of the hospital constitutes a valid contract between the physician and the hospital. Nagib v. St. Therese Hospital, Inc., 41 Ill.App.3d 970, 355 N.E.2d 211, 213 (1976). Indeed, the hospital's bylaws provide an "integral relationship between the hospital and members of its staff." Fahey v. Holy Family Hospital, 32 Ill.App.3d 537, 336 N.E.2d 309, 314 (1975). The Court is hesitant to overturn a hospital's decision to dismiss or curtail a physician's privileges unless plaintiff can show that the procedures followed violated the constitution or bylaws of the hospital. Maimon v. Sisters of the Third Order, 120 Ill.App.3d 1090, 76 Ill.Dec. 517, 519, 458 N.E.2d 1317, 1319 (Dist. 4 1983) citing Jain v. Northwest Community Hospital, 67 Ill.App.3d 420, 24 Ill.Dec. 341, 385 N.E.2d 108 (1978). In addition, the Court will also overturn a hospital's decision if the record of the proceedings of a physician's dismissal clearly showed partiality or bias of the committee that expelled him. Maimon, 76 Ill.Dec. 519, 458 N.E.2d 1319 citing Van Daele v. Vinci, 51 Ill.2d 389, 282 N.E.2d 728 (1972).
The evidence at trial showed that the executive committee properly followed the hospital bylaws for summary dismissal. Any right to a hearing plaintiff may have had due to his dismissal was waived since plaintiff did not request a hearing. Accordingly, the Court finds that the executive committee acted properly pursuant to the hospital's bylaws and plaintiff has no right to recover under a breach of contract theory. Judgment will be entered for defendant on Count I of plaintiff's complaint.

Count II  Antitrust Claim
Plaintiff claims that defendant's actions in curtailing his staff privileges are violations of § 1 and § 2 of the Sherman Act. The Sherman Act covers two types of activities, activities that are in interstate commerce and activities that substantially affect interstate commerce. McLain v. Real Estate Board of New Orleans, 444 U.S. 232, 241, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980); Hospital Building Company v. Trustees of the Rex Hospital, 425 U.S. 738, 743 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976).
In McLain, the Supreme Court held that a plaintiff must show that the local activity has a substantial effect on interstate commerce. *44 Lease Lights, Inc. v. Public Service Company of Oklahoma, 701 F.2d 794, 798-99 (10th Cir.1983); Turf Paradise, Inc. v. Arizona Downs, 670 F.2d 813, 818-19 (9th Cir.1982).
The Eighth Circuit Court of Appeals has held that to establish jurisdiction under the Sherman Act, a plaintiff must show that the challenged conduct occurs in or affects interstate commerce. Hayden v. Bracy, 744 F.2d 1338 (1984). In view of the relevant facts regarding plaintiff's medical practice while in Cairo, Illinois and the executive committee's actions suspending plaintiff, the Court finds that the action taken does not substantially affect interstate commerce. Hayden, 744 F.2d at 1343. Accordingly, judgment will be entered for defendant on Count II of plaintiff's complaint.

Count III  Intentional Infliction of Emotional Distress claim
To recover under Count III, plaintiff must show that defendant's conduct was "extreme, outrageous, atrocious, utterly intolerable and beyond all possible bounds of decency." Watson v. Franklin Finance, 540 S.W.2d 186, 189 (Mo.App.1976) (citation omitted). According to the facts presented at trial and stated above, plaintiff did not make any showing that defendant's conduct approached the standard stated in Watson. Accordingly, judgment will be entered for defendant on Count III of plaintiff's complaint.