FOURTH DIVISION
 November 21, 1996











Nos. 1-96-0743) Cons.
 1-96-1086)


RICKY ALAN (RICK) BUTLER, ) Appeal from
 ) the Circuit Court
 Plaintiff-Appellee, ) of Cook County.
 )
 v. )
 )
USA VOLLEYBALL, Formerly Known as ) No. 96-CH-34
United States Volleyball Association, )
and LEA WAGNER, Commissioner of Great )
Lakes Regional Volleyball Association, ) Honorable
 ) Michael B. Getty,
 Defendants-Appellants. ) Judge Presiding.



 JUSTICE THEIS delivered the opinion of the court:

 The defendants, USA Volleyball and Lea Wagner, Commissioner of
the Great Lakes Regional Volleyball Association, present a
consolidated appeal of the trial court's order granting a permanent
injunction prohibiting the defendants from enforcing their expulsion
of plaintiff, Ricky Alan (Rick) Butler, from USA Volleyball
membership, for having sex with minor female players. The trial court
found that the standard of conduct contained in USA Volleyball bylaws
and invoked to expel Butler was "impermissibly vague." On appeal,
defendants argue that the trial court abused its discretion in
granting a permanent injunction in favor of Butler. First, defendants
contend that the trial court applied an erroneous constitutional
standard to determine whether the bylaws of USA Volleyball, a
voluntary association, are vague. Second, defendants claim that the
trial court erred by not finding that USA Volleyball relied on its
implied right to discipline when expelling Butler. We reverse.
 Rick Butler, a successful junior volleyball coach, has coached
almost 30 national championship junior girls' teams. Butler created
the Great Lakes Center in West Chicago, a premier volleyball facility,
and operates its Sports Performance Volleyball Club. Butler also runs
the largest volleyball camp nationwide and is the "most published
video author" in volleyball.
 In 1994, USA Volleyball received complaints from several former
players alleging that Butler had sexual relationships with them when
they were under 18 years old and playing for Butler's volleyball club. 
Butler and his attorney then met with the executive director and
general counsel of USA Volleyball to discuss the allegations. Butler
asked for and was provided with information regarding the charges. In
November 1994, Lea Wagner, the Commissioner of Great Lakes Regional
Volleyball, informed Butler that a formal complaint had been lodged
with USA Volleyball and twice requested from Butler a detailed written
response specifically admitting or denying the three separate
allegations of misconduct. USA Volleyball then outlined its position
for Butler, explaining that Butler could be disciplined under USA
Volleyball's general discipline authority or pursuant to section 9.04
of USA Volleyball bylaws authorizing disciplinary action for conduct
subjecting USA Volleyball to "public embarrassment or ridicule." 
Pursuant to Butler's request, the Regional Volleyball Association
would be the "first level of adjudication" pursuant to section C of
article XI of the USA Volleyball operating code.
 The regional hearing was held before a panel comprised of four
executive committee members of the Great Lakes Regional Volleyball
Association. Butler was represented by counsel. Butler and his wife
made a prepared statement and the panel received a one-page statement
from each of the three girls. At the conclusion of the hearing, the
panel believed it had insufficient evidence to consider the charges
and requested additional information regarding both Butler's response
to the charges and the specifics of the allegations. Several months
later, the panel reconvened and unanimously determined that there was
probable cause to believe that the alleged misconduct occurred and
that the appropriate discipline would entail suspension or expulsion
for greater than one year. Accordingly, the matter was referred to
the Ethics and Eligibility Committee of USA Volleyball pursuant to
article XI(D) of the operating code.
 Butler was notified of the regional hearing determination and the
hearing date before the Ethics and Eligibility Committee (Ethics
Committee). Butler was also provided with a copy of all materials
submitted to the Ethics Committee. A de novo hearing was held before
the Ethics Committee in July 1995. Butler again was represented by
counsel and was given an opportunity to cross-examine the three
complainants via questions asked of them through the committee chair. 
Butler also was allowed to present any and all witnesses who could
testify regarding the alleged events. 
 The Ethics Committee issued its decision, finding that Butler
"had unprotected sexual intercourse and a subsequent physical and
emotional relationship" with all three girls, two of whom were 16 at
the time and the other 17. Accordingly, the Ethics Committee expelled
Butler from USA Volleyball membership for life with the option of
applying for conditional membership in five years. Butler appealed
the decision to the Executive Committee of USA Volleyball which
affirmed the decision of the Ethics Committee. Additional appeals to
the Board of Directors and the Delegate Assembly of USA Volleyball
were available. The parties, however, agreed to consider Butler's
administrative appeals exhausted so that he could bring legal action.
 Butler filed a motion for a temporary restraining order pursuant
to section 11/101 of the Code of Civil Procedure (735 ILCS 5/11-101
(West 1994)), which the trial court denied. The court held that
Butler did not raise a fair question of success on the merits because
the defendants had acted in accordance with USA Volleyball bylaws and
operating code, Butler was accorded rudimentary due process, and no
emergency existed on which to grant Butler emergency relief.
 Butler then filed a motion for a preliminary injunction pursuant
to section 11-102 (735 ILCS 5/11-102 (West 1994)) to enjoin defendants
from enforcing USA Volleyball's expulsion order. Butler challenged
the expulsion order on both substantive and procedural grounds. 
First, Butler argued that section 9.04 of the USA Volleyball bylaws,
authorizing expulsion of members for acts causing the corporation
"public embarrassment or ridicule," is an unenforceable standard
because the language is impermissibly vague and ambiguous. Second,
Butler alleged that USA Volleyball did not follow its own bylaws and
operating code in conducting the disciplinary action. And finally,
Butler claimed that defendants denied him due process. The trial
court allowed a motion to intervene submitted by minor players of the
Great Lakes Regional Volleyball Association and minor players on the
Sports Performance Volleyball teams coached by Butler. After a
hearing on the merits, the parties agreed to have the court decide the
matter as a permanent injunction motion. 
 The trial court granted Butler's motion and permanently enjoined
USA Volleyball and Lea Wagner from enforcing the expulsion order of
the Ethics Committee. In so holding, the court found that Butler had
met all four prongs necessary to obtain injunctive relief: (1) a
clear and ascertainable right in need of protection; (2) irreparable
harm without injunctive relief; (3) no adequate remedy at law; and (4)
success on the merits. Postma v. Jack Brown Buick, Inc., 157 Ill. 2d
391, 399, 626 N.E.2d 199, 204 (1993). The court did not address the
substantive findings of USA Volleyball that Butler had engaged in the
alleged misconduct. Instead, the court found that section 9.04 of the
USA Volleyball bylaws presented an "impermissibly vague" standard for
expelling a member. The court explained that "public embarrassment
and ridicule" was not an objective standard, but rather a subjective
one, leaving no limit on the discretion of association disciplinary
bodies. The court declined to decide whether USA Volleyball had an
implied right to discipline because Butler was not specifically
charged with such a violation. The court intimated that the
association might be able to discipline Butler based on its implied
right to expel members for conduct that clearly violates the
fundamental objects of the association, in accordance with the
procedures contained in the bylaws and operating code.
 On appeal, defendants argue that the trial court erred in
granting a permanent injunction in favor of Butler: (1) by applying an
erroneous constitutional standard to determine whether the bylaws of
USA Volleyball, a voluntary association, are vague; and (2) by not
finding that USA Volleyball relied on its implied right to discipline
when expelling Butler. We reverse and find that the trial court erred
in determining that Butler succeeded on the merits. Therefore, we
need not address whether Butler has a protectible property, contract,
or membership interest in this situation. Further, we will not
discuss the interests of the intervenors, minor members of the Great
Lakes Regional Volleyball Association and minor players on teams
coached by Butler. 
 Typically, motions for injunctive relief are reviewed under an
abuse of discretion standard and the trial court's decision will not
be reversed unless it is against the manifest weight of the evidence. 
McArdle v. Rodriguez, 277 Ill. App. 3d 365, 372, 659 N.E.2d 1356, 1362
(1995). There is, however, a distinction in both purpose and proof as
between preliminary and permanent injunctions. Buzz Barton &
Associates v. Giannone, 108 Ill. 2d 373, 385-86, 483 N.E.2d 1271, 1277
(1985). Preliminary injunctions are designed simply to preserve the
status quo pending resolution of the merits of the case. Postma v.
Jack Brown Buick, Inc., 157 Ill. 2d 391, 397, 626 N.E.2d 199, 202
(1993). In contrast, permanent injunctions are designed to extend or
maintain the status quo indefinitely when the plaintiff has shown
irreparable harm and that there is no adequate remedy at law. 
American National Bank & Trust Co. of Chicago v. Carroll, 122 Ill.
App. 3d 868, 881, 462 N.E.2d 586, 595 (1984). When granting permanent
injunctive relief, the trial court, by definition, necessarily decides
the plaintiff's success on the merits of the case. And when, as here,
the case raises pure questions of law, we find that the determination
of the merits of the permanent injunction are subject to de novo
review. Magee v. Huppin-Fleck, 279 Ill. App. 3d 81, 85, 664 N.E.2d
246, 249 (1996).
 Courts are reluctant to interfere with the disciplinary decisions
of voluntary associations. Absent a violation of law or public
policy, Illinois courts refrain from examining the substance of
voluntary associations' actions or regulations. Werner v.
International Ass'n of Machinists, 11 Ill. App. 2d 258, 272, 275, 137
N.E.2d 100, 108, 109 (1956); Yeomans v. Union League Club of Chicago,
225 Ill. App. 234, 237 (1922). Historically, courts have reversed
association action only when there was a violation of the constitution
or bylaws of the association, when the association rules and
proceedings violated concepts of fundamental fairness, or when the
association's action was motivated by prejudice, bias, or bad faith. 
Van Daele v. Vinci, 51 Ill. 2d 389, 397, 282 N.E.2d 728, 733 (1972)
(Underwood, C.J., dissenting); Virgin v. American College of Surgeons,
42 Ill. App. 2d 352, 369, 192 N.E.2d 414, 423 (1963).
 Indeed, disciplinary proceedings conducted by voluntary
associations do not require strict compliance with judicial standards
of due process. Instead, the accused member is entitled to a hearing
before "a fair and impartial tribunal." Van Daele, 51 Ill. 2d at 394-
95, 282 N.E.2d at 732. This fair hearing assumes that the accused
member is given adequate notice of the charges. International
Brotherhood of Electrical Workers, Local No. 399 v. Zoll, 135 Ill.
App. 3d 910, 915, 482 N.E.2d 446, 450 (1985). The accused also should
have an opportunity to defend. Virgin, 42 Ill. App. 2d at 371, 192
N.E.2d at 423. In addition, "some" evidence must be presented at the
disciplinary hearing to support the alleged charges. Sheet Metal
Workers Local Union No. 218 v. Massie, 255 Ill. App. 3d 697, 705, 627
N.E.2d 1154, 1159 (1993).
 Butler claims the association's rules violated concepts of
fundamental fairness because section 9.04 of the USA Volleyball bylaws
presents an "impermissibly vague" standard. Section 9.04 of the USA
Volleyball bylaws provides that any member who "acts in such a fashion
as to cause this Corporation public embarrassment or ridicule by
virtue of having such *** individual associated with it, may be
suspended or expelled from affiliation, *** by a majority vote of a
duly constituted quorum of the Board of Directors acting in good
faith." The bylaws then authorize the Board to delegate various
functions, including discipline to various subcommittees. 
Disciplinary procedures are provided for in USA Volleyball's operating
code.
 Butler's primary argument to the trial court was that the 
"public embarrassment" standard in USA Volleyball bylaws was
insufficient to put him on notice that sexual relationships with minor
girls whom he coached could be cause for expulsion. However, Illinois
courts have not required associations to draft bylaws detailing
specific acts as grounds for discipline. As long as the association
bylaws are reasonable, and their enforcement not arbitrary, courts
will not interfere.
 In an early case, Yeomans v. Union League Club of Chicago, 225
Ill. App. 234, 237 (1922), this court found that a club member was
appropriately expelled for kissing a female club employee when the
bylaws provided that any member could be expelled for "misconduct, and
especially any member whose conduct shall be hostile to the objects or
injurious to the character, of this club ***." The court did not
require a specific finding of misconduct. Instead, the court observed
that there was no allegation that the bylaw was illegal or against
public policy and, in the absence of fraud or gross injustice, the
court would not interfere. Yeomans, 225 Ill. App. at 242.
 In Head v. Lutheran General Hospital, 163 Ill. App. 3d 682, 694,
516 N.E.2d 921, 928-29 (1987), the hospital had no written standard
governing the frequency of patient visits or the writing of progress
notes. Nevertheless, the various hospital review committees applied a
standard of reasonableness to evaluate the doctor's behavior. The
court rejected the doctor's claim that the hospital board's decision
was arbitrary. "Courts have long applied a standard of reasonableness
to evaluate behavior, and the fact that people can disagree on the
application of this standard to certain cases does not render the
decisions based on this standard arbitrary." Head, 163 Ill. App. 3d
at 695, 516 N.E.2d at 929. 
 USA Volleyball's decision that Butler's behavior was
unreasonable was not arbitrary. Further, the association's decision
that it would be subject to public embarrassment because one of its
best known members had sexual relations with minor players was not
fundamentally unfair. Butler has made no allegation that USA
Volleyball's disciplinary proceedings were conducted in bad faith or
that the decision to expel Butler was made on the whim or caprice of
certain association members. See Van Daele v. Vinci, 51 Ill. 2d 389,
282 N.E.2d 728 (1972). In the absence of such an allegation, we only
consider the process afforded the disciplined member. Siqueira v.
Northwestern Memorial Hospital, 132 Ill. App. 3d 293, 300, 477 N.E.2d
16, 21 (1985). Courts will not interfere with association
disciplinary actions comprised of "fair proceedings which may be
provided for in organization by-laws, carried forward in an atmosphere
of good faith and fair play." Van Daele, 51 Ill. 2d at 395, 282
N.E.2d at 732 (quoted citation omitted).
 Based on our review of the record, USA Volleyball followed its
bylaws and operating code. Butler's expulsion was conducted according
to the full and fair procedures outlined by USA Volleyball bylaws and
operating code. Moreover, the disciplinary action of USA Volleyball
fully complied with fundamental fairness. 
 Butler received substantially more than "rudimentary due process"
at USA Volleyball's disciplinary proceedings. USA Volleyball complied
with special requests made by Butler. Butler received two separate
hearings. He received notice of the specific charges of sexual
misconduct made against him. He received copies of all the
documentation received by the Ethics Committee. At the Ethics
Committee hearing, Butler had the assistance of counsel, he was
allowed limited cross-examination of the complainants, and he was
allowed to present witnesses who could testify as to the events in
question. In short, not only were the bylaws and operating code of
USA Volleyball complied with, but within those Butler was afforded
every opportunity to clear his name.
 Butler has made no allegation that the proceedings were tainted
or that the decision makers were biased. The nature of voluntary
associations requires that their disciplinary actions, when conducted
with fundamental fairness, be respected. The trial court's order
granting a permanent injunction against defendants' enforcement of
their expulsion order is reversed. 
 Reversed; injunction dissolved. 
 HOFFMAN, P.J., and O'BRIEN, J., concur.